## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| Maurice B. Allen, | * | Case No.: C-1-02-492 |
| Plaintiff, | * | Judge Spiegel |
| vs. | * | **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Deerfield Mfg. Inc., | * | |
| A Subsidiary of Ice Industries | | |
| | * | |
| Defendant. | | |
| | * | Renisa A. Dorner (0040192) |
| | | **WISE & DORNER, Ltd.** |
| | * | 151 N. Michigan Street, Ste. 333 |
| | | Toledo, Ohio 43624 |
| | * | Tel: (419) 327-4303 |
| | | Fax: (419) 327-4302 |
| | * | Attorney for Defendants. |

********

Defendant, Deerfield Manufacturing Inc., a subsidiary of Ice Industries, Inc., by and

through its counsel, and pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, respectfully

moves this Court for an Order granting it Summary Judgment on the grounds that no genuine issue

as to any material fact exists and that Deerfield Manufacturing Inc. is entitled to judgment as a matter

of law.  Further, the evidence in this case, even when regarded in a light most favorable to the

Plaintiff, establishes that reasonable minds can come to but one conclusion and that conclusion is adverse to the Plaintiff, Maurice B. Allen.

Defendant's Motion is supported by the pleadings, the Deposition of Maurice Allen, the Affidavit of Janet Freeman, as well as the statutory and case law pertinent to this action.  Upon applying the law to the undisputed facts in this case, this Court must find that Defendants are entitled to judgment as a matter of law.

WHEREFORE, Defendant Deerfield Manufacturing Inc. a subsidiary of Ice Industries Inc., respectfully requests that its Motion for Summary Judgment be granted.

Respectfully submitted,

/s/     Renisa A. Dorner_____

Renisa A. Dorner (0040192)
WISE & DORNER, Ltd.
151 N. Michigan Street
Suite 333, Davis Building
Toledo, Ohio 43624
Telephone: (419) 327-4303
Telecopy: (419) 327-4302
Attorneys for Defendant

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.    Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  Standard of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV.   Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      A.    Plaintiff's claims for failure to "rehire" must fail as Plaintiff was
             never employed by Defendant. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      B.    Deerfield Inc. was not required to hire any of the former employees
             of Deerfield Company and therefore, no claim for failure to rehire can
             be brought against Deerfield Inc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      C.    Assuming, arguendo, that this Court continues with its inquiry
             and reads Plaintiff's Amended Complaint as alleging a claim of
             failing to "hire" rather than "rehire", Defendant asserts that
             Plaintiff cannot establish a *prima facie* case of race discrimination
             under state or federal law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      D.    Plaintiff cannot establish a *prima facie* case of discrimination based
             on disability under federal or state law. . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      E.    Plaintiff's public policy claim for failing to "rehire" Plaintiff because
             he had a prior work-related injury and subsequent workers compensation
             claim with his former employer is not supported by any evidence and
             must fail as a matter of law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

V.    Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## TABLE OF AUTHORITIES

**U.S. Supreme Court Cases:**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Celotex v. Catrett, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Howard Johnson Co. v. Detroit Local Joint Exec. Bd., 417 U.S. 249 (1974) . . . . . . . . . . . . . . 9
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) . . . . . . . . . . . . . . . . . 7
McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) . . . . . . . . . . . . . . . . . . . . . 9,10,13,14
NLRB v. Burns Security Services, 406 U.S. 272 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981) . . . . . . . . . . . . . . . . . . 9,10
United States Postal Serv. Bd. of Governors v. Aiken, 460 U.S. 711 (1983) . . . . . . . . . . . . . . 9

**U.S. Circuit Court Cases:**

Andrews v. State of Ohio, 104 F.3d 803 (6th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
Cassidy v. Detroit Edison Co., 138 F.3d 629 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 16
Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344 (6th Cir. 1998) . . . . . . . . . . . . . . 14
Gilday v. Mecosta County, 124 F.3d 760, 767 (6th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . 18
Kocsis v. Multi-Care Management, Inc., 97 F.3d 876 (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . 17
Mitchell v. Toledo Hospital, 964 F.2d 577 (6th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . 11,13
Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796 (6th Cir. 1994) . . . . . . . . . . . . . . . . . . . 14
Street v. J.C. Bradford & Co., 886 F.2d 1472 (6th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . 7
Sutton v. United Air Lines, Inc., 130 F.3d 893 (6th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . 15
Talley v. Bravo Pitino Rest., Ltd., 61 F.3d 1241 (6th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . 9
Thurman v. Yellow Freight Sys., Inc., 90 F.3d 1160 (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . 10
Wanger v. Gray Company, 872 F.2d 142 (6th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . 12,13

**District Court Cases:**

Bean v. United Rubber, Cork, Linoleum & Plastics Workers of America, 861
F. Supp. 1554, 1569 (N.D. Ala. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**U.S. Code:**

42 U.S.C. §1981 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
42 U.S.C §2000e-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
42 U.S.C. §§2000e-2(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
42 U.S.C. §12101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
42 U.S.C. §12102(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**Code of Federal Regulations**:

28 C.F.R.§§ 35.104(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
29 C.F.R. §§1630, App. B, §§1630.2(l) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
29 C.F.R. §§1630.2(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
29 C.F.R. §§ 1630.2(j)(3)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
29 C.F.R. §§ 1630.2(j)(2)(i)-(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**Federal Rules of Civil Procedure**

F.R.C.P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
F.R.C.P. 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Ohio Supreme Court Cases:**

City of Columbus Civil Serv. Comm'n v. McGlone, 82 Ohio St.3d 569 (1998) . . . . . . . . . . . 14
Greeley v. Miami Valley Maintenance Contrs. Inc., 49 Ohio St.3d 228 (1990) . . . . . . . . . 21,22
Hood v. Diamond Products, Inc. et al., 74 Ohio St. 3d 298 (1996) . . . . . . . . . . . . . . . . . . . . . 15
Kulch v. Structural Fibers, Inc. (1997), 78 Ohio St.3d 134 (1997) . . . . . . . . . . . . . . . . . . . . 22
Little Forest Medical Center of Akron v. Ohio Civil Rights Commission,
61 Ohio St. 3d 607 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n,
66 Ohio St. 2d 192 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
Provens v. Stark Cty. Bd. of Mental Retardation & Developmental Disabilities, 64 Ohio
St. 3d 252 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
Tullock v. Goodyear Atomic Corp, 62 Ohio St.3d 541 (1992) . . . . . . . . . . . . . . . . . . . . . . . . 21

**Ohio Appellate Decisions:**

Anderson v. Lorain County Title Co., 88 Ohio App.3d 367 (1993) . . . . . . . . . . . . . . . . . . . . 21
Barker v. Dayton Walther Corp., 56 Ohio App. LEXIS 1541 . . . . . . . . . . . . . . . . . . . . . . . . . 21
Sidenstricker v. Miller Pavement Maintenance Inc., Case Nos. 00AP-1146 and 00AP-1460
(Franklin Cty. Oct. 25, 2001), unreported . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**Ohio Misc. Cases:**

Brainard v. City of Toledo et al., 118 Ohio Misc. 2d 158, 164 . . . . . . . . . . . . . . . . . . . . . . . . 12

**Ohio Revised Code**:

O.R.C. §§4112 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

O.R.C. 4112.01(A)(13) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

O.R.C. §4112.02(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

O.R.C. §4112.99 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

O.R.C. §4123.90 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20,21,22

## Other Cases

Singer v. Uni-Marts, Inc., 37 Fair Empl. Prac. Case (BNA) 1197 (W.D. Penn., 1985) . . . . . . . . 8

## I.  BACKGROUND

Plaintiff, Maurice B. Allen (hereinafter "Plaintiff"), initially filed his pro se Complaint on July 5, 2002 and subsequently filed an Amended Complaint on October 18, 2002 against Defendant Deerfield Manufacturing Inc., a subsidiary of Ice Industries (hereinafter "Deerfield Inc." or "Defendant").   As to Count I in the Amended Complaint, Plaintiff alleges that he "was treated differently in his terms and conditions of employment than similarly situated Caucasian employees of Defendant and was not rehired as a result."  Plaintiff claims that this treatment was race discrimination in violation of 42 U.S.C §2000e-2, 42 U.S.C. §1981 as well as ORC §4112.02(A) and ORC §4112.99.   In Count II, Plaintiff alleges that Defendant refused to rehire him in violation of the Americans with Disabilities Act (hereafter "ADA"), 42 U.S.C. §12101 as well as ORC §4112.02(A) and ORC § 4112.99 because he had a record of an impairment and was perceived as disabled.   In Count III, Plaintiff alleges that Defendant violated Ohio's public policy my refusing to rehire Plaintiff because of his prior work-related injury and subsequent workers compensation claim.

Defendant filed an Answer to Plaintiff's Amended Complaint on October 30, 2002 denying the allegations.  See, Answer.  In addition, Defendant set forth affirmative defenses including Plaintiff's failure to state a claim upon which relief may be granted; Plaintiff was not a qualified candidate/applicant and therefore, cannot claim discrimination in the hiring process;  as well as any and all damages Plaintiff suffered were the sole and direct result of the conduct of Plaintiff and not related to any inappropriate conduct on the part of Defendant.  See, Answer.

## II.  STATEMENT OF FACTS

Prior to January 31, 2002, Plaintiff was employed by Deerfield Manufacturing Company (hereinafter "Deerfield Company"). It is undisputed that Deerfield Company ceased doing business on January 31, 2002 and that Plaintiff was informed that his employment with Deerfield Company was terminated by certified letter which he received on February 1, 2002. See, Deposition of Maurice Allen, pg. 20 (hereinafter "Allen Depo. pg.___"). Deerfield Company is not a party to this lawsuit. The Defendant, Deerfield  Inc., purchased the assets (not the liabilities) of Deerfield Company and began business on February 1, 2002. See, Affidavit of Janet Freeman ¶¶2, 3 (hereinafter "Freeman Aff. ¶ __").

Deerfield Inc. was not required to retain any of the employees from Deerfield Company.  In November 2001, many employees of Deerfield Company had been laid off.  In January 2002, these employees were called back to work as active employees of Deerfield Company and were able to be considered for employment with Deerfield Inc., if they submitted an application. Every **active** employee of Deerfield Company, who desired to work for Deerfield Inc., was required to submit an application for employment and be able to begin employment on February 1, 2002 with the new company. See, Freeman Aff. ¶6.  In addition, during the months of December 2001 and January 2002, Mr. Dave Randall and Ms. Janet Freeman would walk the plant floor at various intervals to evaluate the **active** employees of Deerfield Company for possible employment with Deerfield Inc. See, Freeman Aff. ¶7. Employees of Deerfield Company who were not active employees during the evaluation period were not considered for employment with Deerfield Inc.  Initially, those individuals included Maurice Allen, Earl Baker and Jacky Collett.  Earl Baker and Jacky Collett are caucasian males.  However, Earl Baker returned to active employee status during the evaluation period and was therefore, considered for employment.  Maurice Allen and Jacky Collett never returned to work as active employees of Deerfield Company during the evaluation period, and thus, were not evaluated for employment along with the other Deerfield Company employees. See, Freeman Aff. ¶7 and Allen

Depo. pg. 23.

Deerfield Inc. never promised that every employee of Deerfield Company would be hired. In fact, many Deerfield Company **active** employees were not hired by Deerfield Inc. For example, a caucasian male was not hired due to the work ethic he displayed during the evaluation period. Also, other caucasians were not hired due to poor attendance records. However, all of the non-caucasian active employees of Deerfield Company were hired by Deerfield Inc. See, Freeman Aff. ¶8. The **active** employees of Deerfield Company who were not hired by Deerfield Inc. were ALL caucasians.

Janet Freeman, the Human Resource Manager for Deerfield Company and subsequently Deerfield Inc., had a telephone conversation with Plaintiff on or about January 24, 2002 concerning whether he should fill out a job application. Ms. Freeman indicated to Plaintiff that he did not need to submit an application at that point in time. Essentially, Plaintiff would not have been a qualified applicant at that point in time because he could not begin employment on February 1, 2002. Moreover, Ms. Freeman had prior experience with Mr. Allen where his doctor's slips would say that he would return to work on a certain day and then his absence would be extended beyond that date. Because he was not able to begin employment on February 1, 2002 and there was some concern on her part whether he would actually be able to work on February 4, 2002, Ms. Freeman suggested to him that he could fill out an application on February 4, 2002. See, Freeman Aff.¶ 9. Plaintiff testified that Ms. Freeman indicated "you don't have to put yours in [application] until the doctor releases you on February 4th and you can come up then on February 4th to reapply." See, Allen Depo. pg. 41. Plaintiff clearly understood that all employees of Deerfield Company "had to put in new applications in order to work for the new company." Allen Depo. pg. 42.

Plaintiff testified about the many doctor's slips that he had given to Ms. Freeman indicating that he would return to work at various times throughout his workers compensation leave at Deerfield Company, and yet each time he was unable to return on the dates that had been given.

-3-

Allen Depo. pgs. 25-35 and Exhibits B-M.   Plaintiff had established a history of extending the time frame of his absence and not returning to work on the dates that had previously been set according to the slips from his doctor or chiropractor.

In January and February 2002, a stack of applications were available to anyone who wished to fill out an application on a table outside of the human resource department. While Deerfield Inc. gave special consideration to **active** employees of Deerfield Company prior to February 1, 2002, all applicants after February 1, 2002 were considered on their own merit.  Because Mr. Allen never submitted an application for employment, he was never considered for employment.  See, Freeman Aff.¶10.  Mr. Allen knew as early as the summer of 2002 that Deerfield Inc. was claiming that he had not applied for employment and yet, still waited until February 2003 to even attempt to apply for a position.

On February 4, 2002, Plaintiff knew that he had been terminated from Deerfield Company and had not been hired by Deerfield Inc., still Plaintiff entered the business premises via the employee entrance of Deerfield Inc. Allen Depo. pg. 52-53.  He entered at approximately 7:00 a.m. when the employees of Deerfield Inc. were already busy at work. Allen Depo. pg. 54.  As he entered, he testified that Ms. Freeman's first comment to Plaintiff was "you aren't suppose to be here."  Allen Depo. pg. 55.  Ms. Freeman approached Mr. Allen, as she would any non-employee of Deerfield Inc., and indicated to him that he was not suppose to be there.  Ms. Freeman indicates that she said that he had not been hired by the new owner and that he would have to leave.  She even told him that he could fill out an application and pointed to the front of the building where the applications were located on the table.  See, Freeman Aff.¶11. Ms. Freeman was not aware that Mr. Allen apparently misunderstood her statement that "he had not been hired by the new owner" to mean that the new owner had actually considered him for employment and had declined.  To the contrary, Mr. Allen was never considered for employment because he was not an active employee of Deerfield Company during the evaluation period and he failed to submit an application for employment. See, Freeman

-4-

Aff.¶11.

Plaintiff's misunderstanding about him not being hired by the new owner is not surprising when you consider his contrary statements given to the EEOC as well as in his deposition regarding whether he was given a reason for not being hired. In his separate statements to the EEOC, he claims in some that he was not given a reason and then in others he claims that he was given a reason. Then, in his deposition, he also states that he wasn't given a reason.

> "Q. So is it true or not true, did Janet Freeman give you a reason for you not being hired on January 24th, 2002, or didn't she?
>
> A.    She didn't give a reason."

Allen Depo. pg. 75, Exhibits O, P, Q and R.

Plaintiff claims that a similarly situated white employee was hired for employment at Deerfield Inc. Plaintiff cites Earl Baker as a white individual who had been off on workers compensation leave at Deerfield Company and was hired by Deerfield Inc. Plaintiff admits, though, that Earl Baker had returned to active employment at Deerfield Company during January, 2002 which provided him an opportunity to be evaluated for employment by Ms. Freeman and Mr. Randall. Allen Depo., pg. 77. In fact, Plaintiff even admits that Mr. Baker was off on workers compensation far longer than he had been and yet he was hired at Deerfield Inc. In fact, Earl Baker returned to work as an **active** employee of Deerfield Company in mid-January, 2002.

Plaintiff also claims that "Evelyn Curl" and "Noni Stines" were both hired by Deerfield Inc. even though they were not actively working at Deerfield Company in January, 2002. Allen Depo., pgs. 103-105. However, later in his deposition, Plaintiff recants his testimony and indicates that he does not know if they had returned to active employment by January, 2002. Allen Depo., pg. 105. In fact, Evelyn Carroll, a caucasian female, was considered with the other active employees of Deerfield Company because she had returned to active status as of January 1, 2002. Eleanora Steines, a caucasian female, was considered with the other active employees of Deerfield Company

because she had been on active status for the entire year of 2001 and January 2002.  See, Freeman Aff.¶7.

His other examples of similarly situated individuals were Karl Roth and Carrie. Plaintiff claims that these two individuals had quit their jobs at Deerfield Company and were hired by Deerfield Inc., but he is not sure what positions they held.  Allen Depo., pgs. 78-80.  Karl Roth and Carrie Gibson were hired to begin work on February 4, 2002 as second shift operators.  Mr. Roth and Ms. Gibson had previously worked for Deerfield Company, had left on good terms and applied for a job with Deerfield Inc.  Mr. Allen's last job at Deerfield Company was operating a forklift for the 73 line.  Deerfield Inc. was not operating the 73 line in February, 2002 and no forklift operator was needed for that line.  See, Freeman Aff.¶15.  Plaintiff is also not aware of any African American males who had applied for employment and were denied employment at Deerfield Inc. Allen Depo., pg. 106.  As previously stated, every African American **active** employee of Deerfield Company was hired by Deerfield Inc.

As of February 4, 2002, Plaintiff claims that he was not disabled and was capable of performing his job one hundred percent. Allen Depo., pg. 122.  Deerfield Inc. never perceived Plaintiff with a disability and never considered Plaintiff as being disabled.  It was suggested to Plaintiff that he wait to fill out an application when he was released by his doctor and he was no longer claiming disability.  However, Plaintiff never filled out an employment application, and thus Plaintiff was never a qualified candidate/applicant for employment with Deerfield Inc.  See, Freeman Aff. at ¶ 9.

Plaintiff filed two charges of discrimination with the Equal Employment Opportunity Commission.  Both of these charges were dismissed by the EEOC as they could not conclude that the information they obtained established a violation of any statute.  See, Dismissal and Notice of Rights dated April 5, 2002 (racial charge) and July 19, 2002 (charge for disability).

## III.  STANDARD OF LAW

Rule 56 of the Federal Rules of Civil Procedure directs the disposition of a Motion

for Summary Judgment.  In relevant part, Rule 56(c) states:

> *The judgment sought shall be rendered forthwith if the pleadings,*
> *depositions, answers to interrogatories and admissions on file,*
> *together with affidavits, if any, show that there is no genuine issue as*
> *to any material fact and that the moving party is entitled to judgment*
> *as a matter of law.*

Rule 56(e) places responsibility on the party against whom summary judgment is

sought to demonstrate that summary judgment is improper, either by showing the existence of a

material question of fact or that the underlying substantive law does not permit such a decision.  In

relevant part, the provision states:

> *When a motion for summary judgment is made and supported as*
> *provided in this rule, an adverse party may not rest upon the mere*
> *allegations or denials of his pleading, but his response, by affidavits*
> *or as otherwise provided in this rule, must set forth specific facts*
> *showing there is a genuine issue for trial.  If he does not so respond,*
> *summary judgment, if appropriate, shall be entered against him.*

Fed. R. Civ. P. 56(e).  Rule 56(e) requires the non-moving party to go beyond the pleadings, and by

affidavits, depositions, answers to interrogatories, or admissions on file, designate specific facts

showing a genuine issue for trial.  Celotex v. Catrett, 477 U.S. 317, 324 (1986).

This court must look beyond the pleadings and assess the proof to determine whether

there is a genuine need for trial.  See, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

574, 587 (1986).  The proper inquiry is whether the evidence is such that a reasonable jury could

return a verdict for the plaintiff.  See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986);

Street v. J.C. Bradford & Co., 886 F.2d 1472, 1476-80 (6th Cir. 1989).  "Rule 56(c) mandates the

entry of summary judgment, after adequate time for discovery and upon motion, against a party who

fails to make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial."  See, Celotex Corp., at  322.

## IV. ARGUMENT

**A.    Plaintiff's claims for failure to "rehire" must fail as Plaintiff was never employed by Defendant.**

According to the Amended Complaint, all of Plaintiff's claims against Defendant stem from the allegation that Defendant failed to "rehire" Plaintiff.  <u>See</u>, Amended Complaint.  Plaintiff contends that Defendant should be held liable (under various theories) for "failing to rehire" Plaintiff. However, it is undisputed that Plaintiff had never previously been employed by Defendant, thus no claim for failure to "rehire" is appropriate.  Therefore, by all  accounts, the Amended Complaint should be immediately dismissed for failing to state a cause of action for "failing to rehire" against this Defendant, as Plaintiff had NEVER been employed by Defendant.  <u>See</u>, <u>Singer v. Uni-Marts, Inc.</u>, 37 Fair Empl. Prac. Case (BNA) 1197 (W.D. Penn., 1985).  Because Defendant was never Plaintiff's employer, summary judgment ought to be granted on all counts found in the Complaint regarding failure to rehire, thereby ending any further inquiry.

**B.    Deerfield Inc. was not required to hire any of the former employees of Deerfield Company and therefore, no claim for failure to rehire can be brought against Deerfield Inc.**

As the facts have clearly shown, Plaintiff was never employed by Deerfield Inc., therefore Plaintiff could have never been "rehired."   Moreover, Defendant purchased the assets of Deerfield Company and opened a new business known as Deerfield Inc.  In this situation, Deerfield Inc. was free to refuse to hire any or all of the employees of the prior company.  <u>See</u>, <u>Bean v. United Rubber, Cork, Linoleum & Plastics Workers of America</u>, 861 F. Supp. 1554, 1569 (N.D. Ala. 1994); <u>NLRB v. Burns Security Services</u>, 406 U.S. 272, 280 n. 5 (1972).  The **active** employees of Deerfield Company submitted applications, were evaluated while performing their jobs by Ms. Freeman and Mr.

-8-

Randall and were given preferential consideration by Deerfield Inc. Deerfield Inc. did not have to consider any of Deerfield Company's employees and could certainly choose to consider only those "actively" working at the time. See, Howard Johnson Co. v. Detroit Local Joint Exec. Bd., 417 U.S. 249, 261-62 (1974). Thus, the fact that Plaintiff was not hired by Deerfield Inc. does not, by itself, rise to a cause of action against Deerfield Inc.

      **C.**    **Assuming, arguendo, that this Court continues with its inquiry and reads Plaintiff's Amended Complaint as alleging a claim of failing to "hire" rather than "rehire", Defendant asserts that Plaintiff cannot establish a *prima facie* case of race discrimination under state or federal law.**

Title VII of the Civil Rights Act of 1964 prohibits the failure or refusal to hire any individual on the basis of race, color, religion, gender, or national origin. See , 42 U.S.C. §§2000e-2(a)(1). Under Title VII, the crucial inquiry is whether "the defendant intentionally discriminated against the plaintiff." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). The Supreme Court has explained that a plaintiff may prove intentional discrimination either by direct or circumstantial evidence. See , United States Postal Serv. Bd. of Governors v. Aiken, 460 U.S. 711, 714 n.3 (1983); see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 526 (1993) (Souter, J., dissenting) (stating that McDonnell Douglas framework allows "plaintiffs and courts to deal effectively with employment discrimination revealed only through circumstantial evidence").

To avoid a grant of summary judgment on a Title VII claim, a plaintiff must either provide direct evidence of discrimination or establish a prima facie case, which creates an inference of discrimination based on circumstantial evidence. Talley v. Bravo Pitino Rest., Ltd., 61 F.3d 1241, 1248 (6th Cir. 1995) (citations omitted). Because no direct evidence of intentional discrimination exists in this case, Plaintiff must utilize the burden-shifting format established in McDonnell Douglas

-9-

<u>Corp. v. Green</u>, 411 U.S. 792 (1973) to attempt to show intentional discrimination.   A prima facie

case for failure to hire requires Plaintiff to show (1) that he is a member of a protected class; (2) that

he applied for, and did not receive, a job; (3) that he was qualified for the job; and (4) that a similarly-

situated person who was not in the plaintiff's protected class received the job. <u>Thurman v. Yellow</u>

<u>Freight Sys., Inc.</u>, 90 F.3d 1160, 1166 (6th Cir. 1996); <u>see also Tex. Dep't of Cmty. Affairs v.</u>

<u>Burdine</u>, 450 U.S. 248, 253-54 & n.6 (1981) (quoting <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S.

792, 802 (1973)).   To establish a prima facie case of disparate treatment as a result of a prospective

employer's failure to hire, a plaintiff must show that (1) he applied for an available position; (2) he

was qualified for the position; and (3) he "was rejected under circumstances which give rise to an

inference of unlawful discrimination." <u>Burdine</u>, 450 U.S. at 252-53; <u>See</u> <u>McDonnell Douglas</u>, 411

U.S. at 802.

       If Plaintiff is able to establish a prima facie case of race discrimination, a presumption

is created that Defendant unlawfully discriminated against the Plaintiff.  <u>Burdine</u>, 450 U.S. at 254.

Defendant then must articulate a legitimate, nondiscriminatory reason for the failure to hire the

plaintiff. <u>Id</u>.  If  Defendant produces such a justification, Plaintiff then is required to show that the

reason offered by Defendant is merely pretext and that Defendant's adverse employment action was

motivated by racial discrimination. <u>Hicks</u>, 509 U.S. at 508, 515-16.  In this regard, "'the ultimate

burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff

remains at all times with the plaintiff.'" <u>Hicks</u>, 509 U.S. at 507 (quoting <u>Burdine</u>, 450 U.S. at 253).

       While the <u>McDonnell Douglas</u> and <u>Burdine</u> cases clearly provide the framework for

analysis under federal law, they are also utilized to analyze claims made  under Ohio law.

       The *McDonnell Douglas/Burdine* formula is the evidentiary

-10-

> framework applicable not only to claims brought under Title VII, but also to claims . . . of discrimination under Ohio state law, In re Brantley, 34 Ohio App. 3d 320, 518 N.E. 2d 602 (1987), and to claims under 42 U.S.C. § 1981, Patterson v. McLean Credit Union, 491 U.S. 164, 109 S. Ct. 2363, 2378, 105 L. Ed. 2d 132 (1989). Therefore, the District Court correctly 'lumped together' Plaintiffs Title VII, . . .Section 1981 and Ohio state law theories of discrimination and applied the *McDonnell Douglas/Burdine* evidentiary framework in analyzing the factual and legal merits of Plaintiff's claims.

Mitchell v. Toledo Hospital, 964 F.2d 577 (6th Cir. 1992). Obviously, in analyzing claims arising under O.R.C. §§4112, Ohio courts have adopted the framework established in federal case law concerning Title VII . Little Forest Medical Center of Akron v. Ohio Civil Rights Commission, 61 Ohio St. 3d 607 (1991); Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n, 66 Ohio St. 2d 192 (1981) (Title VII evidentiary formula generally applicable to cases involving violations of R.C. Chapter 4112).

Plaintiff contends that Deerfield discriminated against him in the hiring process because of his race, African American. There is absolutely no direct evidence that Deerfield discriminated against the Plaintiff based upon his race. Deerfield Inc., when opening its plant, decided to give preferential consideration to the **active employees** of Deerfield Company who were interested in a position with Deerfield Inc. Each of the active employees were asked to fill out an application (if interested) and they were evaluated while they performed their jobs. Employees of Deerfield Company, who were not **active employees**, were not asked to fill out an application. The individuals who initially met this criteria were Maurice Allen, Earl Baker and Jacky Collett, one black and two white individuals. Mr. Baker returned to active status during the evaluation period and was considered for employment at Deerfield Inc. Mr. Collett, a caucasian male, never returned to active

-11-

status and therefore, was not asked to apply for a position or considered for employment with Deerfield Inc. Similarly, Mr. Allen was not considered for employment with Deerfield Inc. at the same time as the other Deerfield Company active employees, because he was not an active employee. In addition, he was not able to report to work on February 1, 2002 with the other employees of Deerfield Company as he was still claiming disability.

A stack of applications were available on a table outside of the human resource department for anyone interested in applying for a job. All individuals who were hired by Deerfield Inc. were required to submit an application for employment. Mr. Allen was well aware of this fact as he was told this by another employee of Deerfield Company as well as by Ms. Freeman. In fact, Plaintiff admits that he understood that in order to be employed he would have to submit an application. Yet, he never submitted an application. One of the critical elements of a prima facie case for discriminatory hiring is that the individual had to apply for a position. In this case, Plaintiff NEVER applied for a position with Deerfield Inc. Plaintiff's failure to complete an employment application resulted in him not being a qualified candidate/applicant for employment with Defendant. Therefore, Plaintiff never entered into the hiring process. See, Brainard v. City of Toledo et al., 118 Ohio Misc. 2d 158, 164. (The Court held that because Plaintiff never completed the hiring process there was no employment relationship.)

In the case of Wanger v. Gray Company, 872 F.2d 142 (6th Cir. 1989), the Sixth Circuit Court of Appeals was presented with a situation where an individual was claiming failure to hire but had failed to submit an application. In Wanger , the Plaintiff claimed that the Defendants were aware of his desire to apply for any available position at a certain facility, and should have hired him. The Sixth Circuit stated, "[g]enerally, if one formally applies for [a] position, then the employer is under

-12-

an obligation to consider the individual if he is otherwise qualified." Id. at 146.  In the case *sub judice*, as in Wanger, Plaintiff did not formally apply for an available position.  Merely asserting that Defendant was aware of his desire to obtain a position is insufficient to establish a prima facie case. In Wanger, the Sixth Circuit held that because the plaintiff failed to establish that he applied for the position which he sought, he could not state a prima facie case of discrimination. See , 872 F.2d at 147. Accordingly, because the Plaintiff in the case *sub judice* failed to apply for a position at Deerfield Inc, and despite Defendant's alleged awareness of his desire to obtain a position with the new company, Plaintiff cannot establish a prima facie case of race discrimination for failure to hire or rehire.

Based on the above facts, Plaintiff can only establish the first prong of a prima facie case which is that he is a member of a protected class.  Plaintiff cannot establish the remaining elements required under McDonnell Douglas for a *prima facie* case of racial discrimination in the hiring process.  Plaintiff never applied for a position, even though he was well aware of the need to submit an application.  He apparently misunderstood a comment made by the Human Resource manager who was trying to get him out of the plant area where he didn't belong, as he had not been employed by the new owner.  According to Mr. Allen, he was seeking a position as a forklift operator on Line 73.  On February 4, 2003, there were no positions available for a forklift operator on Line 73 because that line was not being used by Deerfield Inc.

In order to establish a prima facie claim of disparate treatment, a plaintiff must "produce evidence which at a minimum establishes (1) that he was a member of a protected class and (2) that for the same or similar conduct he was treated differently than similarly-situated non-minority employees." Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992).  Moreover, "the plaintiff must show that the 'comparables' are similarly-situated in all respects, absent other circumstantial or

statistical evidence supporting an inference of discrimination." <u>Ercegovich v. Goodyear Tire & Rubber Co.</u>, 154 F.3d 344,352 (6th Cir. 1998) (quoting <u>Mitchell</u>, 964 F.2d at 583) (internal quotation marks omitted). This means a plaintiff must "prove all of the relevant aspects of his employment situation were 'nearly identical' to those of [the non-minority's] employment situation." <u>Pierce v. Commonwealth Life Ins. Co.</u>, 40 F.3d 796, 80 (6th Cir. 1994). All of the non-caucasian **active** employees of Deerfield Company were employed by Deerfield Inc. The active employees of Deerfield Company who were not hired by Deerfield Inc. were ALL caucasians. Thus, Plaintiff cannot set forth sufficient factual evidence which establish a *prima facie* case of racial discrimination under <u>McDonnell Douglas</u> and the Amended Complaint must be dismissed.

### D. <u>Plaintiff cannot establish a *prima facie* case of discrimination based on disability under federal or state law.</u>

Plaintiff claims that he was discriminated against because he had a pattern of disability and was perceived as a person with a disability. Plaintiff admits that he was not disabled and that he was 100% on February 4, 2002. In fact, he even admits that he was "a hundred percent" on January 23, 2002. Plaintiff claims however that he had a record of disability or was perceived by Defendant as a person with a disability under federal and/or state law.

First, disability discrimination, according to the Ohio statute, includes discrimination on the basis of either "a physical or mental impairment that substantially limits one or more major life activities" or "being regarded as having a physical or mental impairment." Ohio Rev. Code §§ 4112.01(A)(13). The Ohio statute was modeled after the federal Americans with Disabilities Act (ADA), and Ohio courts look to the ADA and its interpretation by federal courts for guidance in interpreting the Ohio statute. <u>City of Columbus Civil Serv. Comm'n v. McGlone</u>, 82 Ohio St.3d 569, 697 (Ohio 1998)("We can look to regulations and cases interpreting the federal [ADA] for guidance in our interpretation of Ohio law.")

-14-

In order to establish a *prima facie* case of handicap discrimination under Ohio law, the person seeking relief must demonstrate (1) that he or she was handicapped,  (2) that an adverse employment action was taken by an employer, at least in part, because the individual was handicapped, and  (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in question.  Hood v. Diamond Products, Inc. et al., 74 Ohio St. 3d 298 (1996). In order to establish a claim under the Americans with Disabilities Act, a Plaintiff must demonstrate that

> (1) [he was a] disabled person within the meaning of the ADA; (2) [he was] qualified, i.e., able to perform the essential functions of the job, with or without reasonable accommodation (which [he] must describe); and (3) [Deerfield] discriminated against [him] in its employment decision (the job application procedure and/or hiring process) because of [his] alleged disability.

Sutton v. United Air Lines, Inc., 130 F.3d 893 (6th Cir. 1997).  Thus, the inquiry under both claims is identical.  Critical for both claims is that Plaintiff must be able to establish that he was disabled.

The first step of the inquiry under both statutes is whether the individual was disabled/handicapped. The ADA defines "disability" with regard to an individual as follows:

> "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> "(B) a record of such an impairment; or
>
> "(C) being regarded as having such an impairment."

Section 12102(2), Title 42, U.S.Code. While the Ohio statute, O.R.C. 4112.01(A)(13), defines "disability" in this manner:

> "[1] a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; [2] a record of a physical or mental impairment; or [3] being regarded as having a physical or mental impairment."

-15-

Because the ADA prohibits employers from discriminating against a "qualified individual with a disability because of [that] disability," Plaintiff's ability to show that he is "disabled" within the meaning of the statute is a "threshold requirement" for recovery under the Act. Cassidy v. Detroit Edison Co., 138 F.3d 629, 633 (6th Cir. 1998) (quoting 42 U.S.C. §§12112).

Plaintiff claims that he is deemed disabled because he has a record of an impairment and he was regarded by his employer as being an individual with a disability.  A "record of an impairment" under the statute means an individual has "a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." See, 28 C.F.R.§§ 35.104(3).  With respect to being an individual who is perceived as being disabled, the applicable regulations provide three ways in which Plaintiff can show that he is "regarded as" having a disability:

> (1) The individual may have an impairment which is not substantially limiting but is perceived by the employer . . . as constituting a substantially limiting impairment;
>
> (2) the individual may have an impairment which is only substantially limiting because of the attitudes of others toward the impairment; or
>
> (3) the individual may have no impairment at all but is regarded by the employer . . . as having a substantially limiting impairment.

29 C.F.R. §§1630, App. B, §§1630.2(l). With respect to this definition, the Sixth Circuit has held:

> [t]hat definition of disability "is designed to protect against erroneous stereotypes some employers hold regarding certain physical or mental impairments that are not substantially limiting in fact." Schluter v. Industrial Coils, Inc., 928 F. Supp. 1437, 1448-49 (W.D. Wis. 1996). Under that provision, a "plaintiff must show that the perceived impairment is a substantial limitation on a major life activity." Id. at 1449; accord Byrne v. Board of Education, 979 F.2d 560, 567 (7th Cir. 1992) ("an employer does not necessarily regard an employee as handicapped simply by finding the employee to be incapable of satisfying the singular demands of a particular job,"

-16-

quoting <u>Forrisi v. Bowen</u>, 794 F.2d 931, 934 (4th Cir. 1986)).

<u>Kocsis v. Multi-Care Management, Inc.,</u> 97 F.3d 876 (6th Cir. 1996).

      In the <u>Kocsis</u> case, Plaintiff argued that her superiors knew that she was having health problems and that Kocsis suspected that she had MS.  While her employer perceived that her health problems were affecting her job performance, there was no evidence that her employer regarded her as being unable to care for herself or to perform all of the duties of her job.  As a result, the Court held that "Kocsis cannot establish that she had a disability under the 'regarded as' prong of the definition." <u>Id.</u>  Similarly, there is absolutely no evidence in this case before this Court that Defendant perceived Plaintiff to be disabled in any significant manner.

      The United States Court of Appeals for the Sixth Circuit in <u>Andrews v. State of Ohio</u>, 104 F.3d 803 (6th Cir. 1997) held that, to state a claim under the "regarded as" disabled prong of the ADA, a plaintiff must allege that his employer regarded him as having an "impairment" within the meaning of the statute. Plaintiff has failed to do this.  The Sixth Circuit has held that a plaintiff must supply evidence that  the employer believed, however erroneously, that the plaintiff suffered from an "impairment" that, if it truly existed, would be covered under the statute and that the employer discriminated against the plaintiff on that basis. <u>Id. </u>, at 810.  The same requirement is also required in order to establish that Plaintiff is a person with a "record of an impairment."

      According to the Sixth Circuit, a plaintiff must establish that the "impairment", which he claims that he has a record of or that the employer perceives him to have, must be sufficient to deem a person disabled under the ADA.  Therefore, Plaintiff must establish that the impairment "substantially limits one or more major life activities." The regulations accompanying the ADA define

-17-

"major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. §§1630.2(i).   In this case, Defendant's agent, Janet Freeman, was only aware that Plaintiff was claiming that he could not return to full duty at Deerfield Company until February 4, 2002.  There is absolutely no evidence that she knew anything but what was presented on the doctor's slips as far as Plaintiff's ability to return to his job at Deerfield Company without restrictions.  Therefore, the only possible argument that Plaintiff could make is that Defendant perceived his impairment as substantially limiting the major life activity of working.

The term "substantially limits" with respect to an individual's ability to work is also defined in the regulations:

> The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. §§ 1630.2(j)(3)(i). In this case, Defendant was only aware of the fact that Plaintiff's chiropractor and/or doctor were stating that he was not able to perform his specific job.  The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.  See, Gilday v. Mecosta County, 124 F.3d 760, 767 (6th Cir. 1997).  Thus, under the regulations and case law, Plaintiff's alleged inability to perform his single, particular job does NOT constitute a disabling impairment.

If this Court wants to carry the inquiry further, in determining whether a claimant is significantly restricted in his ability to perform "either a class of jobs or a broad range of jobs in various

classes," courts generally consider:

> (i) The nature and severity of the [claimant's] impairment;
>
> (ii)The duration or expected duration of the impairment; and
> (iii)The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. §§ 1630.2(j)(2)(i)-(iii). In this case, Plaintiff testified that on January 23, 2003 he was "a hundred percent, and the doctor just wanting me to finish up my last two treatments." Allen Depo. pg. 97. Plaintiff went on to explain that the only reason he continued to remain off work until February 4, 2003 was to finish up two 1-hour sessions of physical therapy to strengthen his wrist. He even admits that he could have done both of these in the evening. Allen Depo. pgs. 97-99. Otherwise, he was 100% healed and able to work. By his own admission, Plaintiff should have returned to work on January 23, 2002 and completed his two therapy sessions in the evenings. Clearly, Plaintiff's injury was not severe, did not last very long, and did not create any long lasting impairment. Thus, Plaintiff cannot establish that he was disabled under the ADA. There is nothing to suggest in the facts before this Court that Defendant believed that Plaintiff was "substantially limited in one or more major life activities."

Plaintiff cannot meet the requirement of showing that he was disabled. Plaintiff admits that he was 100% capable of returning to gainful employment as January 23, 2002 as well as on February 4, 2002 when he showed up to apply for a job. While Plaintiff could not work his specific job for a period of time following his work-related injury, there is no evidence to suggest that he could not have been employed to perform other jobs. He admittedly was able to work all jobs as early as January 23, 2002. He did not have nor was he regarded as having the type of "impairment" which was contemplated by the statutes.

-19-

With respect to the second and third elements of a *prima facie* case , Plaintiff failed to apply for a job therefore he was not qualified.  In addition, Defendant hired Earl Baker, who had just returned to active status at Deerfield Company after being on an extended workers compensation leave which was much longer that Plaintiff's leave.  If Defendant was refusing to hire individuals who had just returned to work after being on disability leaves because of a pattern of disability or perception of disability, then Defendant would not have hired Earl Baker.  As previously argued, Plaintiff never submitted an application of employment and that is why he was not employed with Defendant, which had absolutely nothing to do with any alleged disability.

E.     **Plaintiff's public policy claim for failing to "rehire" Plaintiff because he had a prior work-related injury and subsequent workers compensation claim with his former employer is not supported by any evidence and must fail as a matter of law.**

In Count III of the Amended Complaint, Plaintiff contends that the Defendant's failure to rehire him because of his prior work-related injury and workers compensation claim undermines Ohio's public policy as set for in O.R.C. §4123.90.  This statute specifically states:

> No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer. Any such employee may file an action in the common pleas court of the county of such employment in which the relief which may be granted shall be limited to reinstatement with back pay, if the action is based upon discharge, or an award for wages lost if based upon demotion, reassignment, or punitive action taken, offset by earnings subsequent to discharge, demotion, reassignment, or punitive action taken, and payments received pursuant to section 4123.56 and Chapter 4141 of the Revised Code plus reasonable attorney fees. The action shall be forever barred unless filed within one hundred eighty days immediately following the discharge, demotion, reassignment, or punitive action taken, and no action may be instituted or maintained unless the employer has received written notice of a claimed violation of this paragraph within the ninety days immediately following the discharge, demotion, reassignment, or punitive action taken. (Emphasis added)

-20-

First and foremost, R.C. §4123.90 provides an adequate claim for an individual who believes they have been retaliated against based upon the fact that they submitted a workers compensation claim. The Ohio statute requires that such individual take action by submitting a written notice to the employer within 90 days following the "punitive" action. In this case, Plaintiff did not comply with the statutory requirement to submit a written notice to the employer. Thus, he is barred from pursuing any action under R.C. 4123.90. So, Plaintiff has attempted to set forth his statutory claim, which is actually barred, as a public policy claim instead.

Plaintiff's claim in Count III is allegedly based upon the public policy embodied in R.C. 4123.90. In the syllabus of the case of <u>Greeley v. Miami Valley Maintenance Contrs. Inc.</u>, 49 Ohio St.3d 228 (1990), the Ohio Supreme Court stated that public policy warrants a cause of action for wrongful discharge when an employee is discharged for a reason which is prohibited by statute. The Ohio Supreme Court, in two later decisions, however, limited its <u>Greeley</u> decision. In these subsequent decisions, the Ohio Supreme Court has made it adamantly clear that its decision in <u>Greeley</u> was for a very narrow issue related to granting a civil remedy to an employee who had been discharged in violation of a statute which provided no remedy. <u>See, Tullock v. Goodyear Atomic Corp</u>, 62 Ohio St.3d 541 (1992); <u>Provens v. Stark Cty. Bd. of Mental Retardation & Developmental Disabilities</u>, 64 Ohio St. 3d 252 (1992). The Ohio Ninth Appellate District in the case of <u>Anderson v. Lorain County Title Co.</u>, 88 Ohio App.3d 367 (1993) stated "[w]e analyze <u>Greeley</u>, <u>Tulloh</u> and <u>Provens</u> as providing no separate cause of action to [the employee] since R.C. 4123.90 provides an effective remedy for violation of public policy favoring workers compensation remedies." The Court further stated that <u>Greeley</u> was not intended to provide two civil remedies arising from the same

-21-

violation of the statute.

Moreover, there are no cases supporting a finding that Ohio has accepted a public policy exception which allows for a claim of failure to hire in violation of R.C. 4123.90. Plaintiff contends that he is entitled to bring a public policy claim based upon the fact that he was not hired allegedly in violation of O.R.C. 4123.90.

The Ohio Supreme Court has only recognized the public policy claim for "wrongful discharge" and not for "wrongful hiring." Contrary to the statute at issue in Greeley, R.C. 4123.90 provides an employee with a civil remedy for its violation. According to the Ohio Supreme Court's decision in Kulch V. Structural Fibers, Inc., 78 Ohio St.3d 134 (1997), *certiorari denied*, 522 U.S. 1008, if an employee intends to bring an action for wrongful discharge based upon the public policy embodied in a particular statute, that employee must comply with the requirements set forth in the statute which embodies the particular public policy. In the case of Sidenstricker v. Miller Pavement Maintenance Inc., Case Nos. 00SP-1146 and 00AP-1460 (Franklin Cty. Oct. 25, 2001), unreported (attached hereto), plaintiff did not comply with the requirements of R.C. 4123.90 and therefore, a directed verdict in favor of the employer was granted. Similarly, in the case *sub judice,* Plaintiff has not complied with the statutory requirements found under R.C. §4123.90 by providing a written notice to Deerfield Inc. The first notice of such claim was in the form of the Amended Complaint in October 2002, over 240 days after he was not hired. The statute very clearly states that "no action may be instituted or maintained unless the employer has received written notice of a claimed violation of this paragraph [4123.90] within the ninety days immediately following the discharge, demotion, reassignment, or punitive action taken." *Id.* Thus, Plaintiff should not be allowed to bring a "public policy" claim based upon the same set of facts that are barred by statute due to Plaintiff's failure to

provide a written notice.

Moreover, there is absolutely no evidence that Defendant "refused to rehire Plaintiff because of his prior work-related injury and subsequent workers compensation claim." The facts very clearly show that Plaintiff never applied for a position and that the only reason he was not hired was because he had not applied. The fact that Plaintiff filed a workers' compensation claim while employed with his prior employer, Deerfield Company, was not a factor considered when determining whether Plaintiff would be offered employment. As set forth above, Defendant hired numerous individuals who had filed workers compensation claims with their prior employer. In fact, Earl Baker had just returned to Deerfield Company from a workers compensation leave in mid-January 2002 and he was employed by Deerfield Inc. less than two weeks later. There is absolutely nothing to substantiate Plaintiff's contention that he was not hired because of his workers compensation injury or claim.

## V. CONCLUSION

First and foremost, Plaintiff's claims, as stated in the Amended Complaint, against Defendant for failing to "rehire" him must fail, as Plaintiff was never employed by Defendants and therefore could not have been "rehired". As previously stated, if the Court decides to overlook the stated allegations in the Amended Complaint, Plaintiff still has failed to establish a *prima facie* case for race discrimination. Plaintiff failed to apply for a position with Defendant even though he was fully aware of the fact that all individuals interested in working for Defendant were required to apply for a position. There are absolutely no similarly situated caucasian individuals who were hired by Defendant. Notwithstanding the fact that Plaintiff cannot prove a *prima facie* case, Defendant had a legitimate nondiscriminatory reason for not hiring Plaintiff, he NEVER applied. Plaintiff's claims for disability discrimination must fail because Plaintiff was not disabled under the ADA. As to Plaintiff's public policy claim embodied in R.C. §4123.90, Plaintiff failed to provide the statutorily mandated 90-day written notice of violation and therefore cannot proceed with a public policy claim based upon facts which would be barred by the statute. Additionally, Plaintiff's claim for violation of

-23-

public policy must also fail because Ohio has not recognized a public policy claim for failure to hire. Moreover, there is no evidence to support that Defendant even remotely considered such information.

For the foregoing reasons, Defendant Deerfield Manufacturing, Inc., a subsidiary of Ice Industries, Inc. respectfully requests that its Motion for Summary Judgment be granted and that all claims be dismissed. As previously argued, Plaintiff cannot justify proceeding with litigation against Defendant. Deerfield Inc. maintains that no opportunity to discriminate against the Plaintiff in the hiring process ever existed and in fact, no discrimination ever occurred. The sole reason for Plaintiff's failure to be considered for employment was Plaintiff's neglect in submitting an employment application. At most, Plaintiff can establish a possible misunderstanding, but that does not rise to discrimination. Based on these facts, Plaintiff cannot establish a *prima facie* case of racial discrimination, disability discrimination or violation of public policy. Defendant's Motion for Summary Judgment must be granted and all claims must be dismissed.

Respectfully submitted,

/s/     Renisa A. Dorner
        Renisa A. Dorner (0040192)
        WISE & DORNER, Ltd.
        151 N. Michigan Street
        Suite 333, Davis Building
        Toledo, Ohio 43624
        Telephone: (419) 327-4303
        Telecopy: (419) 327-4302
        Attorneys for Defendant

-24-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 17th day of October, 2003 a copy of foregoing Defendant's Motion for Summary Judgment was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/    <u>Renisa A. Dorner                     </u>
       Renisa A. Dorner (0040192)

E:\Deerfield Mfg\Allen\MSJ.wpd