# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| Maurice B. Allen, | * | Case No.: C-1-02-492 |
|     Plaintiff, | * | Judge Spiegel |
| vs. | * | **DEFENDANT'S PROPOSED FINDINGS OF FACT AND** |
| Deerfield Mfg. Inc., A Subsidiary of Ice Industries | * | **CONCLUSIONS OF LAW** |
| | * | |
|     Defendant. | * | Renisa A. Dorner (0040192) **WISE & DORNER, Ltd.** |
| | * | 151 N. Michigan Street, Ste. 333 Toledo, Ohio 43624 |
| | * | Tel: (419) 327-4303 Fax: (419) 327-4302 |
| | * | Attorney for Defendants. |

********

Defendant, Deerfield Manufacturing, Inc., a subsidiary of Ice Industries, Inc. by and through its counsel, hereby submits its Proposed Findings of Fact and Conclusions of Law.

**FINDINGS OF FACT**

1. Plaintiff, Maurice B. Allen (hereinafter "Plaintiff"), filed an Amended Complaint on October 18, 2002 against Defendant Deerfield Manufacturing Inc., a subsidiary of Ice Industries (hereinafter "Deerfield Inc.").

2. The Amended Complaint claims that Plaintiff "was treated differently in his terms and conditions of employment than similarly situated Caucasian employees of Defendant and was not rehired as a result" in violation of 42 U.S.C §2000e-2, 42 U.S.C. §1981 as well as ORC §4112.02(A) and ORC §4112.99.

3. Plaintiff alleges in his Amended Complaint that he had a record of impairment and that Defendant perceived Plaintiff had a disability and refused to rehire him in violation of the Americans with Disabilities Act (hereafter "ADA"), 42 U.S.C. §12101 as well as ORC §4112.02(A) and ORC §4112.99.

4. The final count of the Amended Complaint states that Defendant violated Ohio's public policy stated in O.R.C. 4123.90 by refusing to rehire Plaintiff because of his prior work-related injury and subsequent workers compensation claim.

5. Defendant has denied that it discriminated against Plaintiff and states that Defendant was not considered for employment because he never applied for employment.

6. Prior to January 31, 2002, Plaintiff was an employee of Deerfield Manufacturing Company (hereinafter "Deerfield Company") but was not an active employee. Deerfield Company ceased doing business on January 31, 2002 and Plaintiff was informed that his employment with Deerfield Company was terminated by certified letter which he received on February 1, 2002. See, Deposition of Maurice Allen, pg. 20 (hereinafter "Allen Depo. pg.___").

7. Defendant Deerfield Inc. purchased the assets of Deerfield Company and began business on February 1, 2002. See, Affidavit of Janet Freeman ¶¶2, 3 (hereinafter "Freeman Aff. ¶ __").

8. Deerfield Inc. was not required to retain any of the employees from Deerfield Company. All employees of Deerfield Company who had been laid off in November, 2001 were called back to work as active employees of Deerfield Company in January, 2002 and were considered for employment with Deerfield Inc., if they submitted an application. Every active employee of Deerfield Company, who desired to work for Deerfield Inc., had to submit an application for employment and be able to begin employment on February 1, 2002 with the new company. See, Freeman Aff. ¶6.

9. During the months of December, 2001 and January, 2002, Mr. Dave Randall and Ms. Janet Freeman evaluated the **active** employees of Deerfield Company for possible employment with Deerfield Inc. See, Freeman Aff. ¶7.

10. Employees of Deerfield Company, who were not active employees during the evaluation period, were not considered for employment with Deerfield Inc. Initially, those individuals included Maurice Allen, Earl Baker and Jacky Collett. Earl Baker and Jacky Collett are caucasian males. However, Earl Baker returned to active employee status during the evaluation period and was therefore, considered for employment. Maurice Allen and Jacky Collett never returned to work as active employees of Deerfield Company during the evaluation period, and thus, were not evaluated for employment along with the other Deerfield Company employees. See, Freeman Aff. ¶7 and Allen Depo. pg. 23.

11. Deerfield Inc. never promised that every employee of Deerfield Company would

be hired. In fact, many Deerfield Company **active** employees were not hired by Deerfield Inc. For example, a caucasian male was not hired due to the work ethic he displayed during the evaluation period. Also, other caucasians were not hired due to poor attendance records. In fact, all of the non-caucasian active employees of Deerfield Company were hired by Deerfield Inc. See, Freeman Aff. ¶8.

12. The **active** employees of Deerfield Company who were not hired by Deerfield Inc. were ALL caucasians.

13. Janet Freeman, the Human Resource Manager for Deerfield Company and subsequently Deerfield Inc., had a telephone conversation with Plaintiff on or about January 24, 2002 concerning whether he should fill out a job application. Ms. Freeman indicated to Plaintiff that he did not need to submit an application at that point in time. Essentially, Plaintiff would not have been a qualified applicant at that point in time because he could not begin employment on February 1, 2002. Moreover, Ms. Freeman had prior experience with Mr. Allen where his doctor's slips would say that he would return to work on a certain day and then his absence would be extended beyond that date. Because he was not able to begin employment on February 1, 2002 and there was some concern on her part whether he would actually be able to work on February 4, 2002, Ms. Freeman suggested to him that he could fill out an application on February 4, 2002. See, Freeman Aff.¶ 9.

14. Plaintiff clearly understood that all employees of Deerfield Company "had to put in new applications in order to work for the new company." Allen Depo. pg. 42. It is undisputed that Plaintiff was on a workers compensation leave of absence during the time frame that evaluation and decisions were being made regarding the hiring of the **active** employees of Deerfield Company for the new company.

15. Plaintiff testified about the many doctor's slips that he had given to Ms. Freeman indicating that he would return to work at various times throughout his workers compensation leave and yet each time he was unable to return on the dates that had been given. Allen Depo. pgs. 25-35 and Exhibits B-M.

16. Plaintiff had established a history of extending the time frame of his absence and not returning to work on the dates that had previously been set according to the slips from his doctor or chiropractor.

17. In January and February, 2002, a stack of applications were available to anyone who wished to fill out an application on a table outside of the human resource department. While Deerfield Inc. gave special consideration to active employees of Deerfield Company prior to February 1, 2002, all applicants after February 1, 2002 were considered on their own merit.

18. Because Mr. Allen never submitted an application for employment, he was never considered for employment. See, Freeman Aff.¶10.

19. Mr. Allen knew as early as the summer of 2002 that Deerfield Inc. was indicating that he had not applied for employment and yet, still waited until February, 2003 to even attempt to apply for a position.

20. On February 4, 2002, Plaintiff knew that he had been terminated from Deerfield Company and had not been hired by Deerfield Inc., still Plaintiff entered the business premises via the employee entrance of Deerfield Inc. Allen Depo. pg. 52-53. He entered at approximately 7:00 a.m. when the employees of Deerfield Inc. were already busy at work. Allen Depo. pg. 54.

21. Ms. Freeman's first comment to Plaintiff was "you aren't suppose to be here." Allen Depo. pg. 55. Ms. Freeman approached Mr. Allen, as she would any non-employee of

Deerfield Inc., and indicated to him that he was not suppose to be there. Ms. Freeman told Mr. Allen that he had not been hired by the new owner and that he would have to leave. She even told him that he could fill out an application and pointed to the front of the building where the applications were located on the table. See, Freeman Aff.¶11.

22. Ms. Freeman was not aware that Mr. Allen apparently misunderstood her statement that "he had not been hired by the new owner" to mean that the new owner had actually considered him for employment and had declined. To the contrary, Mr. Allen was never considered for employment because he was not an active employee of Deerfield Company during the evaluation period and he failed to submit an application for employment. See, Freeman Aff.¶11.

23. Plaintiff's misunderstanding about him not being hired by the new owner is obvious when you consider his contrary statements given to the EEOC as well as in his deposition where he indicated that he wasn't given a reason and then subsequently that he was given a reason.

24. There were no similarly situated white employees/applicants seeking employment who were treated differently.

25. Earl Baker, a white individual, was on a workers compensation leave longer than Plaintiff but returned to active status with Deerfield Company in mid-January, 2002 and was evaluated for employment with Deerfield Inc.

26. Evelyn Carroll, a caucasian female, was considered with the other active employees of Deerfield Company because she had returned to active status as of January 1, 2002. Eleanora Steines, a caucasian female, was considered with the other active employees of Deerfield Company because she had been on active status for the entire year of 2001. See, Freeman Aff.¶7.

27. Karl Roth and Carrie Gibson were hired by Deerfield Inc., as second shift

operators. Mr. Roth and Ms. Gibson had previously worked for Deerfield Company, had left on good terms and had applied for a position with Deerfield Inc. Mr. Allen's last job at Deerfield Company was operating a fork lift for the 73 line. Deerfield Inc. was not operating the 73 line in February 2002 and no fork lift operator was needed for that line. See, Freeman Aff.¶15.

28. As of February 4, 2002, Plaintiff was not disabled and was capable of performing his job one hundred percent. Allen Depo., pg. 122.

29. Deerfield Inc. never perceived Plaintiff with a disability and never considered Plaintiff as being disabled.

30. Within 90 days of February 4, 2002, Plaintiff never provided a written notice to Defendant that he considered Defendant's conduct to be in violation of O.R.C. 4123.90.

## **CONCLUSIONS OF LAW**

1. Rule 56(e) of the Federal Rules of Civil Procedure places responsibility on the party against whom summary judgment is sought to demonstrate that summary judgment is improper, either by showing the existence of a material question of fact or that the underlying substantive law does not permit such a decision.

2. Rule 56(e) requires the non-moving party to go beyond the pleadings, and by affidavits, depositions, answers to interrogatories, or admissions on file, designate specific facts showing a genuine issue for trial. Celotex v. Catrett, 477 U.S. 317, 324 (1986).

3. This court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. See, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the plaintiff. See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986);

Street v. J.C. Bradford & Co., 886 F.2d 1472, 1476-80 (6th Cir. 1989).

  4.  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  See, Celotex Corp., at  322.

  5.  Plaintiff's claims for failure to rehire against Defendant must fail as Plaintiff was never employed by Defendant, thus no claim for failing to rehire is proper.

  6.  The Amended Complaint should be immediately dismissed for failing to state a cause of action against this Defendant, as Plaintiff was NEVER employed by Defendant.  See, Singer v. Uni-Marts, Inc., 37 Fair Empl. Prac. Case (BNA) 1197 (W.D. Penn., 1985).

  7.  Deerfield Inc. was free to refuse to hire any or all of the employees of Deerfield Company. See, Bean v. United Rubber, Cork, Linoleum & Plastics Workers of America, 861 F. Supp. 1554, 1569 (N.D. Ala. 1994); NLRB v. Burns Security Services, 406 U.S. 272, 280 n. 5 (1972).

  8.  Title VII of the Civil Rights Act of 1964 prohibits the failure or refusal to hire any individual on the basis of race, color, religion, gender, or national origin. See , 42 U.S.C. §§ 2000e-2(a)(1). Under Title VII, the crucial inquiry is whether "the defendant intentionally discriminated against the plaintiff." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).

  9.  To avoid a grant of summary judgment on a Title VII claim, a plaintiff must either provide direct evidence of discrimination or establish a prima facie case, which creates an inference of discrimination based on circumstantial evidence. Talley v. Bravo Pitino Rest., Ltd., 61 F.3d 1241, 1248 (6th Cir. 1995) (citations omitted).

  10.  Because no direct evidence of intentional discrimination exists in this case,

Plaintiff must utilize the burden-shifting format established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) to attempt to show intentional discrimination.

  11. A prima facie case for failure to hire requires Plaintiff to show (1) that he is a member of a protected class; (2) that he applied for, and did not receive, a job; (3) that he was qualified for the job; and (4) that a similarly-situated person who was not in the plaintiff's protected class received the job. Thurman v. Yellow Freight Sys., Inc., 90 F.3d 1160, 1166 (6th Cir. 1996); See also Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-54 & n.6 (1981) (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).

  12. To establish a prima facie case of disparate treatment as a result of a prospective employer's failure to hire, a plaintiff must show that (1) he applied for an available position; (2) he was qualified for the position; and (3) he "was rejected under circumstances which give rise to an inference of unlawful discrimination." Burdine, 450 U.S. at 252-53; McDonnell Douglas, 411 U.S. at 802.

  13. If Plaintiff is able to establish a prima facie case, a presumption is created that Defendant unlawfully discriminated against the Plaintiff. See Burdine, 450 U.S. at 254. Defendant then must articulate a legitimate, nondiscriminatory reason for the failure to hire the plaintiff. See Id. If Defendant produces such a justification, Plaintiff then is required to show that the reason offered by Defendant is merely pretext and that Defendant's adverse employment action was motivated by racial discrimination. See Hicks, 509 U.S. at 508, 515-16. In this regard, "'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Hicks, 509 U.S. at 507 (quoting Burdine, 450 U.S. at 253).

  14. The McDonnell Douglas and Burdine cases are also utilized in analyzing

9

discrimination claims made under Section 1981 and Ohio's discrimination law. In re Brantley, 34 Ohio App. 3d 320, 518 N.E. 2d 602 (1987), and to claims under 42 U.S.C. §1981, Patterson v. McLean Credit Union, 491 U.S. 164, 109 S. Ct. 2363, 2378, 105 L. Ed. 2d 132 (1989).

15. There is absolutely no direct evidence that Deerfield Inc. discriminated against the Plaintiff based upon his race. Deerfield Inc. when opening its plant decided to give preferential consideration to the **active employees** of Deerfield Company who were interested in a position with Deerfield Inc. Each of the **active employees** were asked to fill out an application (if interested) and they were evaluated while they performed their jobs. Employees of Deerfield Company who were not **active employees** were not asked to fill out an application. The individuals who initially met this criteria were Maurice Allen, Earl Baker and Jacky Collett, one black and two white individuals. Mr. Baker returned to active status during the evaluation period and was considered for employment at Deerfield Inc. Mr. Collett, a caucasian male, never returned to active status and therefore, was not asked to apply for a position with Deerfield Inc. Similarly, Mr. Allen was not considered for employment with Deerfield Inc. at the same time as the other Deerfield Company employees because he was not an active employee.

16. All individuals who were hired by Deerfield Inc. were required to submit an application for employment. Mr. Allen was well aware of this fact as he was told this by another employee of Deerfield Company as well as by Ms. Freeman. In fact, Plaintiff admits that he understood that in order to be employed he would have to submit an application.

17. Because he never completed an application, Plaintiff never entered into the hiring process. See, Brainard v. City of Toledo et al., 118 Ohio Misc. 2d 158, 164. (The Court held that because Plaintiff never completed the hiring process there was no employment relationship.)

18. Mr. Allen was seeking a position as forklift operator on Line 73. On February 4, 2003, there were no positions available for a forklift operator on Line 73.

19. All of the non-caucasian active employees of Deerfield Company were employed by Deerfield Inc. The active employees of Deerfield Company who were not hired were ALL caucasians.

20. In order to establish a prima facie claim of disparate treatment, a plaintiff must "produce evidence which at a minimum establishes (1) that he was a member of a protected class and (2) that for the same or similar conduct he was treated differently than similarly-situated non-minority employees." Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992). Moreover, "the plaintiff must show that the 'comparables' are similarly-situated in all respects, absent other circumstantial or statistical evidence supporting an inference of discrimination." Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998) (quoting Mitchell, 964 F.2d at 583) (internal quotation marks omitted). This means a plaintiff must "prove that all of the relevant aspects of his employment situation were 'nearly identical' to those of [the non-minority's] employment situation." Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir.1994).

21. In the case of Wanger v. Gray Company, 872 F.2d 142 (6th Cir. 1989), the Sixth Circuit Court of Appeals was presented with a situation where an individual was claiming failure to hire but had failed to submit an application. The Sixth Circuit held because the plaintiff failed to establish that he applied for the position which he sought, he could not state a prima face case of discrimination. See , 872 F.2d at 147.

22. The Ohio disability statute was modeled after the federal Americans with Disabilities Act (ADA), and Ohio courts look to the ADA and its interpretation by federal courts for

guidance in interpreting the Ohio statute. City of Columbus Civil Serv. Comm'n v. McGlone, 82 Ohio St.3d 569, 697 (Ohio 1998)("We can look to regulations and cases interpreting the federal [ADA] for guidance in our interpretation of Ohio law.")

23. In order to establish a *prima facie* case of handicap discrimination under Ohio law, the person seeking relief must demonstrate (1) that he or she was handicapped, (2) that an adverse employment action was taken by an employer, at least in part, because the individual was handicapped, and (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in question. Hood v. Diamond Products, Inc. et al., 74 Ohio St. 3d 298 (1996).

24. In order to establish a claim under the Americans with Disabilities Act, a Plaintiff must demonstrate that (1) [he was a] disabled person within the meaning of the ADA; (2) [he was] qualified, i.e., able to perform the essential functions of the job, with or without reasonable accommodation (which [he] must describe); and (3) [Deerfield] discriminated against [him] in its employment decision (the job application procedure and/or hiring process) because of [his] alleged disability. Sutton v. United Air Lines, Inc., 130 F.3d 893 (6th Cir. 1997).

25. The ADA defines "disability" with regard to an individual as follows:

"(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

"(B) a record of such an impairment; or

"(C) being regarded as having such an impairment."

Section 12102(2), Title 42, U.S.Code.

26. While the Ohio statute, O.R.C. 4112.01(A)(13) defines "disability" in this manner:

> "[1] a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; [2] a record of a physical or mental impairment; or [3] being regarded as having a physical or mental impairment."

27. Plaintiff's ability to show that he is "disabled" within the meaning of the statute is a "threshold requirement" for recovery under the Act. Cassidy v. Detroit Edison Co., 138 F.3d 629, 633 (6th Cir. 1998) (quoting 42 U.S.C. §§12112).

28. The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. 29 C.F.R. §§ 1630.2(j)(3)(i). Plaintiff's inability to perform his single, particular job does not correlate with a finding that he suffers from a physical or mental impairment that substantially limits the major life activitiy of working.

29. Plaintiff does not have a record of physical or mental impairment as required by the ADA.

30. Plaintiff has not been regarded as having a physical or mental impairment by Defendant as required by the ADA.

31. Plaintiff must show that the record of impairment and/or perceived impairment is a substantial limitation on a major life activity. Kocsis v. Multi-Care Management, Inc., 97 F.3d 876 (6th Cir. 1996).

32. To state a claim under the "regarded as" disabled prong of the ADA, Plaintiff must allege that his employer regarded him as having an "impairment" within the meaning of the statute. Plaintiff did not have an "impairment" within the meaning of the statute and he was not regarded as having any such impairment.

33. Plaintiff's public policy claim for failing to rehire Plaintiff because he had a prior work-related injury and subsequent workers compensation claim is not supported by any evidence or law.

34. Under ORC 4123.90 an employer may not take any punitive action against any employee because the employee filed a claim under the workers compensation law.

35. O.R.C. 4123.90 provides an adequate remedy for any individual who believes they have been retaliated against based upon the fact that they submitted a workers compensation claim.

36. Plaintiff failed to submit written notice to Defendant as required by O.R.C. 4123.90.

37. Plaintiff is barred from any action under O.R.C. 4123.90 and therefore is barred from pursuing any public policy claim based upon the same set of facts.

38. Ohio has recognized a common law claim for wrongful discharge in violation of public policy. However, Ohio has not recognized any common law claim for failure to hire in violation of public policy.

39. Plaintiff has not established a prima facie case of racial or disability discrimination under either federal or state law and therefore, such claims are dismissed.

40. Plaintiff has failed to establish any breach of public policy which results in a claim

under Ohio law in this case.

                Respectfully Submitted,

/s/    <u>Renisa A. Dorner</u>

      Renisa A. Dorner (0040192)
      **WISE & DORNER, Ltd.**
      151 N. Michigan Street
      Suite 333, Davis Building
      Toledo, Ohio 43624
      Telephone: (419) 327-4303
      Telecopy: (419) 327-4302
      Attorneys for Defendant

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 17th day of October, 2003 a copy of foregoing Findings of Fact and Conclusions of Law was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/    <u>Renisa A. Dorner</u>

      Renisa A. Dorner (0040192)

E:\Deerfield Mfg\Allen\findoffact.wpd