FILED
KENNETH J. MURPHY
CLERK

03 OCT 21 AM 9:54

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| Maurice B. Allen, | * | Case No.: C-1-02-492 |
| Plaintiff, | * | Judge Spiegel |
| vs. | * | **AFFIDAVIT OF JANET FREEMAN** *in support of their Motion for Summary Judgment* |
| Deerfield Mfg. Inc., A Subsidiary of Ice Industries | * | |
| Defendant. | * | |
| | * | Renisa A. Dorner (0040192) **WISE & DORNER, Ltd.** |
| | * | 151 N. Michigan Street, Ste. 333 Toledo, Ohio 43624 |
| | * | Tel: (419) 327-4303 Fax: (419) 327-4302 |
| | * | Attorney for Defendants. |

********

STATE OF OHIO    )
                 ) SS:
COUNTY OF LUCAS )

Upon being duly sworn, Janet Freeman, testified as follows:

(1) I am over the age of 18 years and have knowledge with respect to the

1

matters contained herein.

(2) I was employed by Deerfield Manufacturing Company (hereafter "Deerfield Company") as the Human Resources Manager from May 26, 1998 to January 31, 2002, when my employment terminated as a result of the owners selling the assets to Ice Industries Inc.

(3) On February 1, 2002, I began my employment with Deerfield Manufacturing Inc., a subsidiary of Ice Industries Inc. (hereafter "Deerfield Inc.") as the Human Resources Manager and remain employed in that position.

(4) In December 2001, I was told by the owners of Deerfield Company to cooperate and provide any assistance possible to the prospective future owners of Deerfield Company's assets, Deerfield Inc. While Deerfield Inc. was not required to retain any of the employees from Deerfield Company, it was hoped that many of the employees of Deerfield Company would be hired.

(5) As part of the directive to aid the prospective new owners, I was delegated the responsibility, along with Dave Randall, to evaluate the active employees of Deerfield Company to determine which employees, if they applied, would be hired as employees for the new company beginning business on February 1, 2002 known as Deerfield Inc.

(6) All employees of Deerfield Company who had been laid off in November 2001 were called back to work as active employees of Deerfield Company in January 2002 and be considered for employment with Deerfield Inc. Every active employee of Deerfield Company, who desired to work for Deerfield Inc., had to submit an application for employment and be able to begin employment on February 1, 2002 with the new company.

(7) During the months of December 2001 and January 2002 ("evaluation period"), I would walk the plant floor at various intervals to evaluate the active employees of Deerfield Company. All employees of Deerfield Company who were not active employees during the evaluation period were not considered for employment with Deerfield Inc. Those individuals included Maurice Allen, Earl Baker and Jacky Collett. Earl Baker and Jacky Collett are caucasian males. Earl Baker returned to active employee status during the evaluation period and was therefore, considered for employment. Maurice Allen and Jacky Collett never returned to work as active employees of Deerfield Company during the evaluation period, and thus, were not evaluated for employment along with the other Deerfield Company employees. Evelyn Carroll, a caucasian female, was considered with the other active employees of Deerfield Company because she had returned to active status as of January 1, 2002. Eleanora Steines, a caucasian female, was considered with the other active employees of Deerfield Company because she had been on active status for the entire year of 2001.

(8)     Deerfield Inc. never promised that every employee of Deerfield Company would be hired. In fact, many Deerfield Company active employees were not hired by Deerfield Inc. For example, a caucasian male was not hired due to the work ethic he displayed during the evaluation period. Also, other caucasians were not hired due to poor attendance records. In fact, all of the non-caucasian active employees of Deerfield Company were hired by Deerfield Inc.

(9)     I did have a phone conversation with Mr. Allen in January 2002 concerning whether he should fill out a job application. I indicated to him that he did not need to submit an application at that point in time. Essentially, he would not have been a qualified applicant at that point in time because he could not begin employment on February 1, 2002. I had prior experience with Mr. Allen where his doctor's slips would say that he would return to work on a certain day and then his absence would be extended beyond that date. Because he was not able to begin employment on February 1, 2002 and there was some concern on my part whether he would actually be able to work on February 4, 2002, I suggested to him that he could fill out an application on February 4, 2002.

(10)     In January and February 2002, a stack of applications were available to anyone who wished to fill out an application on a table outside of the human resource department. While Deerfield Inc. gave special consideration to active employees of Deerfield Company prior to February 1, 2002, all applicants after February 1, 2002 were considered on their own merit. Mr. Allen never submitted an application for employment so he was never considered for employment.

(11)     On February 4, 2002, I was in the plant when I noticed Mr. Allen walking into the plant through the employee entrance. I was near the time clock because it was a new system and I was making sure that everything ran smoothly when the employees clocked in that morning. I was not in the plant area because I was waiting for Mr. Allen. I approached Mr. Allen, as I would any non-employee of Deerfield Inc., and indicated to him that he was not suppose to be there. I stated to him that he had not been hired by the new owner and that he would have to leave. I told him that he could fill out an application and I pointed to the front of the building where the applications were located on the table. Based upon his deposition testimony, it appears as though Mr. Allen misunderstood my statement that "he had not been hired by the new owner" to mean that the new owner had actually considered him for employment and had declined. To the contrary, Mr. Allen was never considered for employment because he was not an active employee of Deerfield Company during the evaluation period and he failed to submit an application for employment. It can be very noisy in the plant and it is very unfortunate if he misunderstood my statement.

(12)     I never prevented Mr. Allen from submitting an application for employment. In fact, on January 24, 2002, I specifically told him to submit his

3

application on February 4, 2002. His presence in the Deerfield Inc. plant by walking through the employee entrance came as a complete shock to me. He was not suppose to be in the plant and my job was to get him out of there. As the Human Resource Manager, I could not allow non-employees to walk around the plant freely. He explained that he needed to get some of his personal belongings and I allowed him to retrieve those before escorting him out of the building. I never indicated that he should go down to unemployment.

(13)    When he left, I wasn't exactly sure what his plans were, so I wished him well in everything that he did. I was unaware that he had misunderstood my comment about not being hired and that he should therefore not apply for a position especially since I had told him previously that he could fill out his application on February 4, 2002.

(14)    Deerfield Inc. did not receive any written notification of Mr. Allen's claim that Deerfield Inc.'s failure to hire him was in retaliation for his filing a workers compensation claim against Deerfield Company until receipt of the amended complaint in October 2002, over 90 days after he was informed that he had not been hired. Moreover, I never perceived Mr. Allen as being disabled. Rather, his doctor's and chiropractor's continually regarded him as unable to perform his job while he was employed at Deerfield Company.

(15)    I never considered the race of any applicant seeking employment with Deerfield Inc. I treated Mr. Allen the same way as I treated Mr. Collett, who was a caucasian non-active employee of Deerfield Company. Carrie Nelson Gibson is a caucasian female who was hired by Deerfield Inc. on February 4, 2002 as a second shift operator. Ms. Gibson had previously worked for Deerfield Company and had left on good terms. Mr. Allen's last job at Deerfield Company was operating a fork lift for the 73 line. Deerfield Inc. was not operating the 73 line and no fork lift operator was needed for that line.

Further, Affiant sayeth naught.

*Janet Freeman*
Janet Freeman

**SWORN TO BEFORE ME** and subscribed in my presence this 15th day of October, 2002.

Notary Public

JIM D. FLUGEL
Notary Public, State of Ohio
My Commission Expires Aug. 19, 2006

E:\Deerfield Mfg\Allen\freeman2_aff.wpd

Certificate of Service
10/21/03 - Gave Hendrickson per phone conversation with R. Warner, Esq.: Counsel is electronically filing a certificate of service for this affidavit to Pft counsel this date.