UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MAURICE ALLEN | : | Case No. 1:02cv492 |
| | : | |
| Plaintiff, | : | Judge Speigel |
| | : | Magistrate Judge Hogan |
| v. | : | |
| | : | |
| DEERFIELD MANUFACTURING | : | PLAINTIFF'S MEMO IN |
| INCORPORATED, A SUBSIDIARY | : | OPPOSITION TO DEFENDANT'S |
| OF ICE INDUSTRIES | : | MOTION FOR SUMMARY JUDGMENT |
| | : | |
| Defendant. | : | |

I.     INTRODUCTION

When Defendant Deerfield Incorporated ("Deerfield Inc.") bought the assets of Deerfield Manufacturing Company ("Deerfield Co."), it refused to consider Plaintiff Maurice for employment because he was off work on a medical leave. Plaintiff was ready to work and jobs were available. When Plaintiff went to the plant to fill out an application, he was told to leave the premises and that Defendant had decided not to hire him.

Plaintiff was the victim of race discrimination. Rather than Plaintiff, a qualified African-American, Defendant hired two Caucasians. Plaintiff was also the victim of disability discrimination. Defendant perceived that Plaintiff was disabled and would not allow him to apply for a job until he could work without restrictions. Finally, Defendant's conduct violated the public policy that underpins Ohio's Workers Compensation Act. Defendant rejected Plaintiff as a candidate for employment solely because he was off work on a workers compensation leave. Defendant's stated reason for not hiring Plaintiff – his failure to submit an application – is wholly pretextual.

As argued more fully below, Defendant's motion should be denied and this case should proceed to trial.

II.   FACTS

Plaintiff Maurice Allen was employed by Deerfield Manufacturing Company ("Deerfield Co.") from September of 1996 until January 31, 2002. He performed in various jobs including working as an operator and driving a forklift. (Allen Aff., ¶ 3, attached as Appendix A). Plaintiff is African American. (Id. ¶ 2).

On August 15, 2001, Plaintiff was injured in an accident that occurred in the parking lot at work. (Allen Aff., ¶ 4). His wrist, neck and back were injured when a truck backed into his car. (Id.). Plaintiff was unable to do his job and applied for Workers' Compensation benefits. Deerfield Co. contested the claim on the basis that it was not work-related. (Id., ¶ 5). Plaintiff eventually required surgery on his wrist and it was performed on November 2, 2001. (Id., ¶ 6).

Throughout the summer and fall of 2001, there was discussion at Deerfield Co. about a possible sale. (Allen Aff. ¶ 7). On about January 22, 2002, Plaintiff happened to see Venita Watson, a coworker at a local store. (Id.). Plaintiff was still on leave as a result of his injury. (Id.). Watson told Plaintiff that Deerfield Co. had been sold and that all employees were in the process of filling out applications for "Deerfield Inc.," the new employer. (Id.). Watson told Plaintiff there was a deadline and that he needed to fill out an application. She offered to bring him a new hire packet. (Id.).

The next day, Plaintiff attempted to contact Janet Freeman, the Human Resources Manager at Deerfield Co. (Id., ¶ 8). Plaintiff and Freeman spoke on January 24, 2002. Plaintiff told her that and that he was aware of the sale and deadline to submit an application for the new owner. (Id.). He also wanted to confirm that Ms. Freeman had received his doctor's release most recent release for Plaintiff to return to work on February 4, 2002. (Freeman depo. at 53-54, excerpt attached as Appendix B; Allen Aff. ¶ 8). Ms. Freeman told Plaintiff that there was no need to fill out an application because he had not yet been released to return to work. Freeman also told Plaintiff that he could fill out an application on February 4, 2002 when his doctor released him to work, and that she would see him then. (Allen Aff. ¶ 8; Freeman Aff., ¶ 12).

2

According to Freeman's deposition testimony, final hiring decisions for Deerfield Inc. were made on or about January 28, 2002. (Freeman depo. at 57). Employees with attendance problems were not hired by Deerfield Inc. (Id. at 26-28). In addition, no employee on sick leave or workers compensation leave, including Plaintiff, was considered for employment. (Id.).

On January 30, 2002, Freeman sent Plaintiff a letter advising him that his employment with Deerfield Co. ended as of midnight on January 31, 2002 upon the sale of the company to Deerfield Inc. (Allen Aff., Ex. 1). Plaintiff did not believe the letter had any effect on his prospective employment with Deerfield Inc., the new owner. (Id., ¶ 9). Freeman had already told him he needed to complete an application for the Deerfield Inc. and he planned on doing so on February 4, 2002.

As instructed by Ms. Freeman, Plaintiff went to the plant on the morning of February 4, 2002 to fill out an application. As was his normal habit, he parked in the employee lot and entered through the employee door. (Id. ¶ 10). Freeman was waiting in the lobby near the time clock.[1] She told Plaintiff he was not supposed to be in there. Plaintiff told her that he was there to fill out an application. Freeman told him that the new owner decided not to hire him and that he had to leave the premises. (Freeman Aff., ¶ 11). When Plaintiff asked why, Ms. Freeman stated only that she did not know and it was the new owner's decision. (Allen Aff., ¶ 10).[2] Plaintiff told Freeman that he needed to get his boots which had been left in the locker room since his injury in August of 2001. She escorted him to and from the locker room. (Id.). She wished him luck and told him he could file for unemployment benefits. (Id.).

---

[1] Freeman's apparent "shock" that Plaintiff was at the plant and used the employee parking lot and entrance is incredible. (Freeman Aff., ¶ 11, 12). Plaintiff has been employed by the predecessor for six years. He was not a stranger to Freeman, and the two had specifically discussed the fact that Plaintiff would fill out an application on February 4, 2002.

[2] Defendant tries to make much of the fact that Plaintiff has stated that no reason was given for the decision and that Plaintiff was told the new owner decided not to hire him. (Defendant's memo at 5). This alleged inconsistency is not an inconsistency at all. The only "reason" provided to Plaintiff was that the new owner decided not to hire him. This is not a reason with any specific rationale.

3

Plaintiff filed his application for unemployment benefits that day. (Allen Aff., ¶ 10-11). Deerfield Inc. never opposed the claim on the basis that Plaintiff rejected available work or that he was unemployed through his own doing as a result of failing to fill out an application. (Id.).

Freeman admits that she knew Plaintiff wanted to return to work, and that he was available to start working February 4, 2002 without restrictions. (Freeman depo. at 80-82 and depo. Ex. 7). Freeman also acknowledges that there was a shortage of operators, and that Deerfield Inc. had placed ads in the paper for employees. (Id. at 89-90 and 104-105). On February 4, 2003, Defendant hired at Karl Roth and Carrie Nelson to work as "operators." (Freeman depo. at 99-100,107-108). Plaintiff was qualified for that job and had done it in the past. (Allen Aff. ¶ 3; Freeman depo. at 89-90 ). Both Roth and Nelson are Caucasian. (Freeman depo. at 107-108).

III.   ARGUMENT

    A.   The Summary Judgment Standard

The court evaluating a summary judgment motion must construe the evidence in the record and all inferences to be drawn from it in the light most favorable to the party opposing the motion. United States v. Diebold, 369 U.S. 654, 655 (1962); 60 Ivy Street Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir. 1987); and Blakeman v. Mead Co. Containers, 779 F.2d 1146, 1150 (6th Cir. 1985). "[A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury not required to believe." Reeves v. Sanderson Plumbing Products Inc., 120 S.Ct. 2097, 2110 (2000). Disputed facts are to be resolved in favor of the non-moving party. Kraus v. Sobel Corrugated Containers, Inc., 915 F.2d 227, 231 (6th Cir. 1990).

The court should not resolve factual disputes by weighing conflicting evidence. It is the jury's role to assess to probative value of the evidence. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Kraus, 915 F.2d 230. Credibility questions should not be decided on summary judgment. Anderson, supra at 249;

4

Bayer v. U.S. Department of Treasury, 956 F.2d 330, 334 (D.C. Cir. 1992). Questions of motive, intent and state of mind are rarely appropriate for summary disposition. 60 Ivy Street, supra; Proffit v. Anacomp, 747 F. Supp 421, 427 (S.D. Ohio 1990). United States Postal Service v. Aikens, 460 US 711, 716 (1983); Kand Medical, Inc. v. Freund Medical Products, Inc., 963 F.2d 125 (6th Cir 1992); Courtney v. Biosound, Inc., 42 F.3d 414, 421 (7th Cir. 1994)(summary judgment standard is applied with added rigor in discrimination cases where intent and credibility are crucial issues); and Gill v. Reorganized School District, 32 F.3d 376, 378 (8th Cir. 1994)(applying summary judgment standard with caution in employment cases because intent is inevitably the central issue.").

The party moving for summary judgment has the burden of showing conclusively that no genuine issue of material fact exists, and the evidence together with all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion. Baker v. Roberts Exp., Inc., 800 F.Supp 1571 (SD Ohio 1992). The moving party's summary judgment papers are to be closely scrutinized while those of the non-movant are to be read indulgently. U.S. v. Real Property Known as 311 Cleveland Ave., Hamilton, Ohio, 799 F.Supp 824 (SD Ohio 1992).

    B.    There Is A Prima Facie Case Of
          Race Discrimination

Count I of Plaintiff's amended complaint asserts racial discrimination in violation of Title VII, 42 U.S.C. § 1981, and O.R.C. § 4112.02(A). A Plaintiff can present a prima facie case through the traditional four-part test set forth in McDonnell-Douglas v. Green, 411 U.S. 792 (1973). Plaintiff must show (1) he was a member of the protected class; (2) he applied for and was qualified for the position he sought; (3) he was rejected; and (4) a Caucasian was hired instead of him or the job remained vacant. Id. at 802. See also Texas Dept. of Commun. Affairs v. Burdine, 450 U.S. 248, 253 (1981). Plaintiff meets each of the four requirements.

First, there is no dispute that, as an African-American, Plaintiff was in a protected class.

5

Second, while Defendant argues that Plaintiff did not apply for a position, this fact is hotly contested. (Defendant's memo at 11-12). Plaintiff clearly wanted to submit an application. He made it known to Janet Freeman on January 24, 2002 that he wanted to fill out an application and be considered for employment. He was not allowed to submit an application before February 4, 2002. When Plaintiff went to the plant to do so on February 4, 2002, Freeman told him the new owner decided not to hire him, to leave the plant, and to apply for unemployment benefits. There is evidence that Plaintiff was denied the opportunity to apply for any of the available jobs. Under these circumstances, courts have held that the application requirement has been satisfied. See Dews v. A.B. Dick Co., 231 F.3d 1016, 1022 (6th Cir. 2000).

The case of Wanger v. Gray Company, 872 F.2d 142 (6th Cir. 1989), cited by Defendant, is inapposite. Wanger never said he wanted to apply for a job and never made an attempt to do so. He and his former employer had been "strangers" for a year. Id. at 146. Here, Plaintiff went to the plant and was told to leave. In this case, submitting an application would have been futile. See Babrocky v. Jewell Food Co., 773 F.2d 857 (7th Cir. 1985), cited with approval in Wanger. Moreover, the fact that applications may have been available to the public is not important here. Plaintiff was specifically told not to fill one out until February 4, 2002. He followed that instruction.

Third, there should be no dispute that Plaintiff was qualified for one of several vacant operator positions. He was last classified as an "operator" at the predecessor company (Freeman depo. 89-90) and had served in that capacity for a number of years prior to being promoted to a fork-lift operator. (Allen Aff. ¶ 3).

Finally, it is undisputed that Defendant hired two Caucasians, Karl Roth and Carrie Nelson, to start working on February 4, 2002. (Freeman depo. at 99-100, 107-108). There is also no question that there continued to be positions available and advertised after February 4, 2002. (Id. at 89-90, 104-105).

6

In sum, Plaintiff has presented a prima facie case of racial discrimination. Under these circumstances, an inference of discrimination arises. The burden shifts to Defendant to articulate a legitimate business reason for its conduct, and in turn for Plaintiff to raise a genuine issue of material fact regarding pretext.[3] See McDonnell-Douglas, supra at 803 and Burdine, supra at 254-56.

C.   There Is A Prima Facie Case Of
     Disability Discrimination

Plaintiff has asserted claims of disability discrimination under both O.R.C. § 4112.02(A) and the Americans With Disabilities Act (ADA), 42 U.S.C. §12101. To prevail on his claims, Plaintiff must demonstrate that: (1) he is "disabled"; (2) he was qualified to perform the essential functions of the job he held or desired with or without accommodation; and (3) he suffered an adverse employment action because of his disability. See McKay v. Toyota Motor Mfg., 110 F.3d 369, 371 (6th Cir. 1997) and Hood v. Diamond Products, 74 Ohio St. 3d 298, 302 (1996). See also Wooten v. City of Columbus, 91 Ohio App.3d 326, 332 (1993) and Hazlett v. Martin Chevrolet, Inc., 25 Ohio St. 3d 279 (1986). Once a plaintiff makes out a prima facie case in a handicap discrimination claim, summary judgment is inappropriate. Degnan v. Goodwill Industries of Toledo, 104 Ohio App. 3d 589, 597 (1994). As demonstrated below, Plaintiff has presented a prima facie case.

1.   Plaintiff Was Disabled.

The ADA and Ohio law have similar definitions for the term "disability." Under the ADA, a disability is: (1) a physical or mental impairment that substantially limits one or more of the major life activities of the individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Section 4112.01(A)(13) of the Ohio Revised Code defines a disability as follows:

---

[3] To avoid repetition, Plaintiff has addressed the issues of pretext and the absence of a legitimate overriding business justification for Defendant's conduct together at pages 14-16.

7

> "'Disability' means a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment."

### a.  There is a record of an impairment

A record of an impairment means an individual "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." <u>MX Group Inc. v. City of Covington</u>, 293 F.3d 326, 339 (6th Cir. 2002), citing 28 C.F.R. §35.104(3).

Plaintiff suffered a work-related injury in August of 2001 and was not able to return to work on an unrestricted basis until February 4, 2002. By early 2002, when decisions were being made by Deerfield Inc. about the employees who would be hired, Plaintiff was still on leave and had a record of a disability. He was receiving Workers Compensation benefits. Defendant never disputed Plaintiff's condition; it only claimed it was not work-related. Further, Defendant would not allow him to do any other job at the plant. Defendant would not even consider him for work based on the fact that he remained off work due to his impairment. Although Defendant argues that Plaintiff did not have a "record" of a disability, Plaintiff was not at work for nearly six months due to an approved workers' compensation injury and leave.

### b.  Plaintiff was regarded as disabled

An individual may fall into the definition of being "regarded as having a disability if an employer ascribes to that individual an inability to perform the functions of the job because of a medical condition when, in fact, the individual is perfectly able to meet the job's duties." <u>Ross v. Campbell Soup Co.</u>, 237 F.3d. 701, 706 (6th Cir. 2001). Defendant clearly regarded Plaintiff as disabled. While Defendant denies this, it admits it never considered Plaintiff as a "qualified" applicant because he was on a leave due to his physical impairment,

and that he was not allowed to apply for any job until he was released to work without restrictions. (Freeman Aff. ¶ 9).

In Henderson v. Ardco, 247 F.3d 645 (6th Cir. 2001), the Court addressed the issue of whether an employee was regarded disabled in connection with an employer's "100% healed rule." The district court held such a rule was "insensitive and repugnant" but determined that Henderson was not disabled. Id. at 649. The Sixth Circuit reversed. It noted that the evidence could be construed that the employer perceived the plaintiff to be unable to perform any job at the plant, and thus, incapable of work in a manufacturing operation. Id. at 651-52. The court also held that the "importance of the 100% rule is its role in determining the threshold issue of perceived disability ... Where the 100% rule is applied to mildly impaired persons to exclude them from a broad class of jobs, it may be treating them as disabled even if they are not, thereby qualifying them for protection under the ADA ... ." Id. at 653. That is precisely what Defendant did here. As in Henderson, there is at least a jury question whether Defendant perceived Plaintiff's condition to be a substantial limit on his ability to perform every job in its facility. When Defendant adopted its hiring policy, and refused to consider Plaintiff for employment, it regarded Plaintiff as disabled from the major life activity of working.

In Johnson v. Paradise Valley School District, 251 F.3d 1222 (9th Cir. 2001), the court affirmed a jury verdict finding that the employer regarded Johnson as disabled. In doing to, the Ninth Circuit pointed to the employer's refusal to accept "partial releases." Id. at 1228. The court noted that the release policy supported an inference that the District regarded Johnson as unable to perform any job. Id., citing McGregor v. National R.R. Passenger Corp., 187 F.3d 1113, 1116 (9th Cir. 1999). The Ninth Circuit was also persuaded by the employer's pretextual reasons for refusing to process Johnson's applications for various positions.

In Ross, supra, the Sixth Circuit reviewed a claim by an employee that he was "regarded" as disabled. The court determined that because whether an employer regards an employee as disabled is a question of the employer's state of mind and intent, it is an issue that should be left to the jury. Id. at 706. The strongest

9

evidence was a memo indicating that Ross was a "back case." Id. at 706-07. Here, there is similar persuasive evidence in the fact that Defendant would not even let Plaintiff apply for work until he could return to full duty.

Plaintiff has presented evidence to show that she meets the definition of "disability" under both state and federal law. At a minimum, the question of whether Plaintiff is disabled should be presented to a jury for decision. See Ross, supra, Henderson, supra, and Roush v. Weastec, 96 F.3d 840, 844 (6th Cir. 1996)(whether chronic bladder condition is disability is for trier of fact.).

### 2.  Plaintiff was Qualified

The second element of Plaintiff's prima facie case is to show that though he was disabled, he was a qualified individual with a disability and could safely and substantially perform the essential functions of the job in question with reasonable accommodation. McKay, supra, at 371 Wooten, supra at 332.

Plaintiff was qualified to perform an operator job as of February 4, 2002. He was able to do some work prior to then but Defendant would not allow him to return on any restricted duty. In addition, there was no reason that Plaintiff could not have completed an application with the intent to start working on February 4, 2002 when his treatment finished. All Plaintiff needed was the ability to fill out an application. Defendant refused to allow him to do so.

Whether an individual is "otherwise qualified" includes the benefit of reasonable accommodation. Shaver v. Wolske & Blue, 138 Ohio App. 3d 653, 663 (2000) and Monette v. Electronic Data Systems Corp., 90 F.3d 1173, 1195 (6th Cir. 1996). Under Ohio law, an employer has an affirmative obligation on an employer to reasonably accommodate a handicap. Kent State University v. Ohio Civil Rights Commission, 64 Ohio App. 3d 427 (1989). The Ohio Administrative Code provides:

> "An employer must make reasonable accommodation to the handicap of an employee or applicant, unless the employer can demonstrate that such an accommodation would impose an undue hardship on the conduct of the employer's business."

Ohio Administrative Code § 4112-5-08(E)(1). (emphasis ours). According to the Ohio Administrative Code:

> "Accommodation may take the form, for example, of providing access to the job, job restructuring, acquisition or modification of equipment or devices or a combination of any of these. Job restructuring may consist, among other things, of realignment of duties, revision of job descriptions or modified and part time work schedules."

O.A.C. §4112-5-08 (E) (2). (Emphasis ours). Reasonable accommodations can also include extending the time for leaves of absence and requesting that an employer reconsider an adverse employment action. <u>Cehrs v. Northeast Ohio Alzheimer's et al.</u>, 155 F.3d 775 (6th Cir. 1998). The burden of demonstrating "undue hardship" is on the employer. <u>Wooten v. City of Columbus</u>, 91 Ohio App. 3d 326, 332. In <u>Cehrs</u>, the court noted that the critical focus is whether the employer can demonstrate undue hardship:

> "If an employer cannot show that an accommodation unduly burdens it, then there is no reason to deny the employee the accommodation."

<u>Id</u>. at 782. Ultimately, undue hardship is a question of fact for the jury to decide. (<u>Id</u>. at 783).

An employee does not have to use "magic words" in order to qualify for an accommodation. The employee must provide enough information to reasonably make the employer aware of the disability and the desire for accommodation. See <u>Ballard v. Rubin</u>, 284 F.3d 957, 961 (8th Cir. 2002) citing <u>Taylor v. Phoenixville School District</u>, 174 F.3d. 142, 158-59 (3rd Cir. 1999). Plaintiff wanted to fill out an application on January 24, 2002 in anticipation of his unrestricted return to work. Defendant refused to allow him to do so. There is no evidence of undue hardship.

### 3. Defendant Took An Adverse Action Against <u>Plaintiff Because of His Disability</u>

Defendant admits that Plaintiff was not considered for employment because he was not an active employee. (Freeman Aff., ¶ 11). The only reason Plaintiff was not an active employee was because he had a record of a disability and Defendant regarded him disabled. Because of his injury, Plaintiff was rejected as a candidate for employment. He was not allowed to complete an application until he was 100% healed. Defendant adopted a hiring process that discriminated against anyone who had a health condition and who

11

was not able to work without restrictions. Defendant acknowledges that no one who was on a medical leave, regardless of restrictions, could even apply for work. The effect was clearly to avoid any employee like Plaintiff with a health condition.

### D. Defendant Violated The Public Policy Underlying O.R.C. § 4123.90 and § 4123.56

In Count III of his Amended Complaint, Plaintiff asserted that Defendant's refusal to rehire Plaintiff undermined the public policy against such conduct "as set forth in Chapter 4123 of the Ohio Revised Code and O.R.C. §4123.90." (Amended Complaint, ¶ 13). The essence of Plaintiff's claim is that when Defendant refused to allow Plaintiff to submit an application or be considered for employment until his workers' compensation leave was exhausted. Contrary to Defendant's argument, Plaintiff's claim is not for retaliation under O.R.C. §4123.90. It is broader than that and includes the general policy underlying the entire Act. Employers should not be permitted to take adverse actions or base hiring decisions solely on the fact that an employee has been injured at work and made a claim for benefits.

Ohio recognizes the "public policy" exception to the employment at-will doctrine. See Greeley v. Miami Valley Maintenance Contractors, 49 Ohio St 3d 228 (1990); Painter v. Graley, 70 Ohio St.3d 377 (1994); and Kulch v. Structural Fibers, Inc., 78 Ohio St 3d 134 (1997). In Kulch, the Court set forth four elements for a public policy tort claim:

> "1.   That clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).
>
> "2.   That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).
>
> "3.   The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).

12

>       "4.   The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element)." (Emphasis sic.)

78 Ohio St. 3d at 151, n. 8. citing H. Perritt, The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie? (1989), 58 U.Cin.L.Rev. 397, 398-399. Whether Plaintiff has met the first two elements are questions of law for the court. Collins v. Rizkana, 73 Ohio St. 3d 65, 70 (1995). "The jury decides factual issues relating to causation and overriding justification." (Id.). As demonstrated below, Plaintiff satisfies all of these requirements.

In Coolidge v. Riverdale Local School District, 100 Ohio St. 3d 141 (2003), the Ohio Supreme Court recently held that it was a violation of the public policy set forth in O.R.C. §4123.56 and O.R.C. §4123.90 to terminate an employee receiving temporary total disability benefits solely on the basis of absenteeism and inability to work when the absence is directly related to an allowed condition. Although this case does not involve the termination of an employee, the same rationale applies. Plaintiff was not allowed to apply for a job with Deerfield Inc. because he was off work due to an injury compensable under the Workers' Compensation Act. If an employer cannot take an adverse action against an employee in the form of a termination solely on the basis of absenteeism due to the industrial injury, it follows that an employer in this situation likewise should not be able to refuse to accept an application from an injured employee solely as a result of his absence arising from a compensable injury.

The Coolidge decision establishes the first two elements of Plaintiff's prima facie case. There is no question that a clear public policy exists or that taking an adverse action against an employee who receives benefits jeopardizes the policy.

In addition, there is no question that Plaintiff's absence due to injury motivated Defendant's refusal to consider him for employment. Defendant repeatedly acknowledges that only active employees were considered.

Finally, as set forth below at pages 14-16, reasonable jurors could find that there was no "overriding legitimate business justification" for Defendant's conduct.

Defendant argues that Plaintiff failed to comply with the written notice requirement in O.R.C. §4123.90 and that this bars his public policy claim. (Defendant's memo at 22). However, as noted above, Plaintiff's public policy claim is not based solely on the policy underpinning O.R.C. § 4123.90.  Moreover, in Coolidge, there was no indication that the plaintiff ever wrote the 90-day letter required for a retaliation claim under O.R.C. § 4123.90.  Still, the Court recognized the same important policy that Plaintiff asserts here.  Employees receiving workers compensation benefits should not be disadvantaged solely because they were injured at work and filed a claim for benefits under O.R.C. § 4123.56.

Defendant's assertion that courts are reluctant to provide a public policy remedy where one is available by statute is undermined by the many Ohio cases that hold just the opposite. (Defendant's memo at 21).  It is now well-established that a public policy claim can be used to supplement existing statutory remedies. See Kulch v. Structural Fibers, 78 Ohio St.3d 134 (1997)(whistleblowing); Livingston v. Hillside Rehabilitation Hospital, 79 Ohio St.3d 249 (1997)(age discrimination); and Kent v. Chester Labs, Inc., 144 Ohio App.3d 357 (2001)(workers compensation retaliation).  Regardless of the existence of O.R.C. § 4123.90, in light of Coolidge, it should be clear that when an employer takes an adverse action against an employee or prospective employee solely because of his or her absence due to a compensable injury, it undermines the public policy underlying what should be the free and unfettered right to make a claim for benefits.

### D. The Stated Reason For Refusing To Hire Plaintiff Is Pretextual And Lacks An Overriding Business Justification

Once Plaintiff establishes a prima facie case, the burden shifts to Defendant to articulate a legitimate non-discriminatory reason for its conduct. Johnson v. Dept. of Health and Human Services, 30 F.3d 45, 47 (6th Cir. 1994).  The burden then returns to Plaintiff to show pretext. (Id.). Under Reeves, pretext is established by showing that the stated reason for the employer's decision is "false." An employer's articulated reason for termination is false or pretextual when it:  (1) has no basis in fact; (2) was insufficient to motivate the decision;

14

or, (3) did not motivate the decision. Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir. 1994). A *prima facie* case plus a showing that Defendant's articulated reason is false is sufficient for Plaintiff to prevail. St. Mary's Honor Center v. Hicks, 509 US 502, 509-510 (1993); Kline v. Tennessee Valley Authority, 128 F.3d 337, 347 (6th Cir. 1997). "There are no hard and fast rules as to . . . what evidence is needed in order to establish pretext. Talley, 61 F.3d at 1248. In Reeves, the Supreme Court held that a prima facie case, combined with sufficient evidence to find that the employer's asserted justification was false may permit the finder of fact to conclude there was unlawful discrimination. 120 S.Ct. at 2110.

Defendant asserts that Plaintiff was not hired because he refused to complete an application. Reasonable jurors could find that Defendant's proffered explanation for its conduct is pretextual and lacks an overriding business justification.

First, the company's explanation is incredible. Defendant says Plaintiff did not submit an application. Plaintiff discussed his desire to fill out an application with Ms. Freeman on January 24, 2002. She told him to fill out an application on February 4, 2002. Plaintiff went to the facility on February 4, 2002 at 7:00 a.m. for the specific purpose of completing an application. When he arrived, he was told he would not be hired and that he had to leave the premises. Defendant's assertion has no basis in fact. Janet Freeman admits that she knew Plaintiff wanted to fill out an application and that he told her he was at the plant to fill out an application on February 4, 2002. She admits that there were jobs available. She admits that there was a need to place ads in the paper. Given all of the above, it is incredible to believe that having made the trip to the facility to fill out an application, Plaintiff would have left without doing so unless he was denied the opportunity.

Second, Defendant has presented inconsistent reasons for refusing to hire Plaintiff. When confronted by Plaintiff, Janet Freeman said she did not know why Plaintiff was not hired. In her deposition, she explained that he was not considered for hire because he was on workers compensation leave and that he failed to submit an application. It is settled that when an employer gives changing or additional reasons for its actions, pretext is established. See Tinker v. Sears Roebuck & Co., 127 F.3d 519, 523 (6th Cir. 1997)(conflicting

15

testimony regarding reasons for plaintiff's dismissal creates jury issue regarding pretext), and <u>Atkinson v. International Technegroup, Inc.</u>, 106 Ohio App. 3d. 349, 360 (Ham. Cty. 1995)(same).

Finally, jurors could find Defendant's explanation for its conduct is simply unreasonable. In <u>Wexler v. White's Fine Furniture, Inc.</u>, 317 F.3d 564 (6th Cir. 2003), the Sixth Circuit accepted the notion that in reviewing the issue of pretext, a jury can consider the unreasonableness of the employer's stated reasons for its conduct. The <u>Wexler</u> decision summarized Sixth Circuit authority showing that evidence the employer's business explanation is lacking in merit and unreasonable can prove pretext:

> "This court has held that <u>the reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation.</u>
>
> . . .
>
> "Several of our sister circuits have similarly concluded that <u>the reasonableness of a business decision is critical in determining whether the proffered judgment was the employer's actual motivation</u>. (emphasis added).
>
> . . .
>
> "*Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988) ("<u>Thus, facts may exist from which a reasonable jury could conclude that the employer's 'business decision' was so lacking in merit as to call into question its genuineness.</u>"); *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1012 n.6 (1st Cir. 1979) ("The reasonableness of the employer's reasons may of course be probative of whether they are pretexts. The more idiosyncratic or questionable the employer's reason, the easier it will be to expose it as a pretext . . . .")."

(emphasis added). 317 F.3d at 577 (6th Cir. 2003).

There is a factual dispute as to Defendant's true motive which precludes summary judgment. It is settled that such questions are not appropriate for resolution on a motion for summary judgment. See <u>Johnson v. UC et al</u>, 215 F.3d at 578 ("In every civil rights action, it is the responsibility of the jury to determine whether the defendant's action were invidious, pretextual, or improperly motivated."); <u>Kand Medical, Inc. v. Freund Medical Products, Inc.</u>, 963 F.2d 125 (6th Cir. 1992); <u>Courtney v. Biosound, Inc.</u>, 42 F.3d 414, 421 (7th Cir.

16

1994)(summary judgment standard is applied with added rigor in discrimination cases where intent and credibility are crucial issues); and <u>Gill v. Reorganized School District</u>, 32 F.3d 376, 378 (8th Cir. 1994)(applying summary judgment standard with caution in employment cases because intent is inevitably the central issue.").

Reasonable jurors could find Defendant's conduct was unreasonable and arbitrary. Plaintiff was a good and conscientious worker. He was injured through no fault of his own. He was not considered for employment despite the fact that he was ready to return on February 4, 2002. When he attempted to complete an application on February 4, 2002, he was denied the opportunity to do so and told to leave the premises.

IV.    <u>CONCLUSION</u>

Defendant's conduct belies that of an employer acting with pure motives and creates a strong inference of illegal discrimination. As demonstrated above, there are disputed issues of fact, motive, and intent for the jury. Defendant's motion should be denied and this case should proceed to trial.

Respectfully submitted,

s/ David Torchia
David Torchia – 0015962
Tobias, Kraus & Torchia
911 Mercantile Library Building
414 Walnut Street
Cincinnati, Ohio 45202
(513) 241-8137
Attorney for Plaintiff
davet@tktlaw.com

<u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of the foregoing has been filed electronically and mailed via Regular Mail to Renisa A. Dorner, Esq., Wise & Dorner, Ltd., 151 N. Michigan Street, Suite 333, David Building, Toledo, Ohio 43624 on this 5th day of December, 2003.

s/ David Torchia
David Torchia – 0015962