## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| Maurice B. Allen, | * | Case No.: C-1-02-492 |
| Plaintiff, | * | Judge Spiegel |
| | | Magistrate Judge Hogan |
| vs. | * | |
| | | **DEFENDANT'S REPLY MEMORANDUM** |
| Deerfield Mfg. Inc., | * | **IN SUPPORT OF ITS MOTION FOR** |
| A Subsidiary of Ice Industries | | **SUMMARY JUDGMENT** |
| | * | |
| Defendant. | | |

********

Defendant, Deerfield Manufacturing Inc. ("Deerfield, Inc."), by and through its counsel, hereby submits its Reply Memorandum in Support of its Motion for Summary Judgment. Plaintiff has made claims in this case with respect to race discrimination, disability discrimination and violation of public policy related to Defendant's failure to hire him.

Plaintiff has attempted to sustain his burden of proof of the issues in this case by incorporating unsubstantiated hearsay facts as well as evidence related to a wholly different company which cannot be used as evidence against Defendant. As has been previously explained and is undisputed, Defendant bought the <u>assets</u> of Deerfield Manufacturing Company ("Deerfield Company") and began operation as Deerfield Manufacturing Inc. on February 1, 2002. Plaintiff has attempted to incorporate the actions, comments and/or conduct of individuals while they were acting in the course of their employment with **Deerfield Company** as support for his claims against Defendant. For example, Plaintiff has alleged facts related to the handling of his work-related injury

while he was working at **Deerfield Company**, as well as his unemployment benefits received from

**Deerfield Company**.  Defendant Deerfield Inc. had NO INVOLVEMENT in these two situations

and has addressed its concerns about this "evidence" in its Motion to Strike, which has been filed

contemporaneously herewith.  Conduct, actions and comments made by individuals acting in their

capacity as employees of **Deerfield Company** have no place in this litigation.  As more fully set forth

in Defendant's Motion to Strike, all conduct, actions and representations made by **Deerfield**

**Company** through its employees cannot and should not be attributed to Defendant Deerfield Inc.

## Factual Inaccuracies

The facts in this case are largely undisputed, however, Plaintiff has made many inaccurate

factual statements in order to attempt to create an issue of material fact.  First, Plaintiff incorrectly

states that "no employee on sick leave or workers' compensation leave, including Plaintiff, was

considered for employment."  As explained in Defendant's Motion for Summary Judgment through

the testimony of Ms. Freeman, the hiring process invoked by Defendant included an evaluation and

assessment of the <u>active</u> employees of Deerfield Company for possible positions with Deerfield Inc.

The term "active" employees would obviously not include those employees who were on a leave of

absence for any reason, whether it be FMLA leave to care for a sick child, sick leave, workers'

compensation leave, disability leave, or any other type of leave of absence during the evaluation

period.  The employees of Deerfield Company who were actively employed during the months of

December 2001 and January 2002 underwent an on-the-job evaluation by Mr. Randall and Ms.

Freeman.  Mr. Allen, who was absent from the workforce, did not have to go through such an

evaluation because he was not actively employed at the time.  Therefore, he was not considered part

of the group of candidates being given preferential treatment for hiring with Deerfield Inc.

There was absolutely nothing discriminatory in Defendant's decision to give preferential treatment to the active employees of Deerfield Company who underwent an evaluation and assessment before being considered for employment. Defendant was in a unique position which enabled it to evaluate potential employees before hiring. Certainly, Defendant's motive for giving a hiring preference to the active employees of Deerfield Company (who could be evaluated for their job performance) over other potential candidates is clearly one regarding job performance and can not be deemed a decision based upon race or disability. Plaintiff, of course, ignores the fact that all non-Caucasians who were actively employed with Deerfield Company were hired by Defendant. Plaintiff also ignores the fact that individuals who had recently been on workers compensation leaves were also hired by Defendant.

Plaintiff readily admits in his affidavit and in his deposition that he was aware of the fact that he needed to fill out an application for employment. He also readily admits that he knew he could not be hired by Deerfield Inc. until he filled out an application. Therefore, it is not surprising that he would have been told that he had not been hired, because he could not be hired until he had applied.

Plaintiff takes great issue with the fact that Ms. Freeman was shocked when she saw Plaintiff walking through the employee entrance. Plaintiff wants this Court to accept that he was somehow entitled to park in an employee parking lot and enter through an employee entrance because he had previously worked for the company that used to own the building. Plaintiff knew he was no longer employed at that location because he had received a *certified letter* two (2) days earlier. Plaintiff's conduct of entering an unauthorized area sheds light on his obvious inability to understand the appropriate way in which to engage the application process. Whether he had the normal habit

3

of parking in an employee lot and using an employee entrance for a prior employer is of no relevance to this case. Plaintiff knew he was not an employee of Defendant and yet he proceeded to enter through an employee door. Plaintiff, by his own admission, admits he was there to fill out an application and yet he did not even attempt to enter the building at the personnel office where the stack of applications was available. It was by mere coincidence that Ms. Freeman happened to be near the employee entrance that morning or else Plaintiff would have apparently walked freely throughout the plant after entering through the employee entrance.

Plaintiff cannot point to one single individual who was hired by Defendant without submitting an application. So, it is incredulous to believe, as Plaintiff would have this court do, that Ms. Freeman would tell him that the new owner had decided not to hire him when he hadn't even applied for a job. Defendant had made no decision about Plaintiff other than the fact that he was considered part of the active employees of Deerfield Company who had underwent the evaluation process. The active employees were under heavier scrutiny than other potential employees who just submitted applications. There is also no evidence that other applicants, who had previously worked for Deerfield Company but were not part of the preferentially treated active employees, had parked in the employee parking lot or entered the building through the employee entrance when they came to apply for a job. Any unauthorized individual walking in through an employee door would have been told the exact same thing as Plaintiff was told: the new owner has not hired you and you are not to be at that location. Ms. Freeman admits that Plaintiff was not hired by the new owner, because he wasn't. Moreover, there is no evidence that he was even considered for employment because all candidates were required to submit an application in order to be considered.

Plaintiff admits that the last job he held for many years prior to being on leave was a

4

forklift operator and not as a machine operator.  In his deposition, he testified that it was his intent to apply for a job as a forklift operator on February 4, 2002. <u>See</u>, Allen Depo., pgs. 65-66. Plaintiff has not produced any evidence that a position for a forklift operator was available at Deerfield Inc. at the time of his alleged attempt to apply for a job on February 4, 2002.  To the contrary, evidence has been submitted by Ms. Janet Freeman that there was no position available as a forklift operator as of February 4, 2002.  Plaintiff has only presented evidence with respect to the hiring of machine operators by the name of Karl Roth and Carrie Nelson who were both hired on February 4, 2002, after having submitted their applications the week previously. Both of these individuals had previously worked for Deerfield Company, just like Plaintiff, and had left Deerfield Company within the prior year on good terms.  They were not part of the preferential group of active employees of Deerfield Company who were hired on February 1, 2002, but rather outside candidates who were hired on February 4, 2002.  While Plaintiff may have had prior experience as a machine operator, by his own admission, he was not applying for a machine operator position.  Therefore, the hiring of Roth and Nelson, Caucasians,  for a wholly different position than the one which Plaintiff claims he was prevented from applying for, is not an appropriate comparison for discrimination purposes.

Contrary to Plaintiff's many assertions in his Memorandum in Opposition, Plaintiff was not "specifically told not to fill one [application] out until February 4, 2002."  Plaintiff testified in his deposition that Ms. Freeman statement was "I don't have to put my application in right now.  She is saying, you can wait until February 4th when the doctor released you to put your application in, and everything will be okay, but I didn't have to put it in right then." <u>See</u>, Allen Depo., pgs. 108-109. Plaintiff testifies to this same statement many times in his deposition including at page 41.  Each time, Plaintiff states that Ms. Freeman said that "he didn't have to put it in right then".  There is absolutely

no evidence by Plaintiff that he was *specifically told not to submit an application prior to February 4, 2002.*  Yet, Plaintiff consistently states that language in his Memorandum in Opposition.  By his own testimony, Plaintiff states during his telephone conversation with Ms. Freeman on January 24, 2002 that he questioned whether he needed to apply by a certain deadline like the active employees of Deerfield Company.  Ms. Freeman stated to him that he did not have the same deadline (which is true because the deadline was for the active employees of Deerfield Company who were being given a preference) and that he didn't have to put his application in by that deadline.  She NEVER TOLD him that he COULDN'T submit his application, merely that he wasn't under the same time constraints as the active employees.  Plaintiff has twisted this conversation by saying that Ms. Freeman specifically told him not to apply prior to February 4, 2002 and there is absolutely no evidence to substantiate such an overt misstatement of the facts.

       When questioned during his deposition as to whether Ms. Freeman had specifically told him on February 4, 2002 that he could not put in an application, Mr. Allen's only response was "she said I had to leave."  He then goes on to state that she did not specifically ask him to go ahead and put in an application.  See, Allen Depo., pg. 69.  Plaintiff never testifies that he was told not to apply for a job or that he thought applying would be futile.  The problem arises because he was asked to leave an area which he had no purpose for being and he interpreted that somehow to mean that he could not apply for a job. There is absolutely no evidence that there was any racial motive behind the comments made to him when he entered the premises.  Plaintiff was told to leave because he was in an employee only area and he had not been hired as an employee.  The mere fact that he was told to leave does not make the fact that filing an application would be futile.   Just 10 days earlier, Ms. Freeman said he could apply for a job and that he could wait until February 4, 2002 if he wanted to.

She never said that he had to wait until February 4, 2002, only that he "could". Plaintiff apparently believes that the human resource manager of a prospective employer is supposed to plead with someone to fill out an application after they have been found in an unauthorized area and are being asked to leave that area.

According to Plaintiff's testimony, he never questioned Mrs. Freeman about how a decision not to hire him could be made when he hadn't even applied for a job. He never said something to the affect that "I thought I had to apply before I could be considered, so how could I have been considered when I hadn't even applied." Rather, Plaintiff claims that he only asked "why?" and he made no other comments to her. See, Allen Depo., pg. 65. It appears illogical to not ask for an explanation when you believe the "rules" so to speak apparently had changed. Plaintiff knew he needed to apply before he could be considered for employment, he knew he hadn't applied, and still he claims he was considered and denied employment without applying.

Plaintiff feels that because he told people that he wanted to apply for a job, that this fact alone is sufficient to ignore the fact that he never applied for a job. Just as Plaintiff indicates that he clearly wanted to submit an application, it was equally clear that Janet Freeman indicated that in order to be considered for employment, he would have to submit an application. Therefore, it seems illogical that she would indicate to him that he was considered and denied employment when he hadn't even applied. Moreover, no one and nothing prevented him from going to the personnel office and submitting an application which was available to any person walking into the personnel door. There is absolutely no evidence that he was denied the opportunity to apply for any of the available jobs.

## RACE DISCRIMINATION

With respect to his racial discrimination claim, Plaintiff argues that he meets the traditional four-part test set forth in <u>McDonnell-Douglas v. Green</u>, 411 U.S. 792 (1973) because (1) he is an African-American, (2) he was told to leave an employee area which apparently prevented him from applying for an operator position for which he was qualified, (3) he was rejected for the position and (4) the position for which he sought (allegedly an operator position) was filled by a Caucasian instead of him. Plaintiff's attempt at a prima facie case fails on many fronts.

Defendant agrees with the first prong that Plaintiff is a member of a protected class based upon his race. However, Defendant disputes that being told to leave an employee-only area when he was not an employee cannot and should not connote a finding of futility on the part of Plaintiff. Plaintiff is looking to place blame on Janet Freeman for his own conduct. Plaintiff was where he did not belong and every reasonable person would agree that a non-employee is not entitled to enter through an employee-only door into an employee-only area. Asking him to leave the area does not reach the level of futility that is required. Plaintiff cites the case of <u>Dews v. A.B. Dick Co</u>, 231 F.3d 1016, 1022 (6th Cir. 2000) for the proposition that the facts of this case constitute a valid excuse for not applying for a job. To the contrary, in <u>Dews,</u> the Sixth Circuit held "that in failure to promote cases a plaintiff does not have to establish that he applied for and was considered for the promotion when the employer does not notify its employees of the available promotion or does not provide a formal mechanism for expressing interest in the promotion." Id. at 1022. The holding in **Dews** does not result in a finding that Plaintiff was excused from applying for a job in this case. Moreover, there was a formal mechanism available to Plaintiff which he neglected to utilize.

Plaintiff takes issue with Defendant's citation to the case of <u>Wanger v. Gray Company</u>, 872 F.2d 142 (6th Cir. 1989) which clearly concerns a failure to apply for a position with a

8

prospective employer. Plaintiff is attempting to argue the same situation as Mr. Wanger did, essentially that Defendant knew that Plaintiff was interested in a position and should have considered him accordingly whether he applied or not. A prima-facie case requires the Plaintiff to have applied for the position that he was denied. It is undisputed that Plaintiff never applied for any position. It is equally undisputed that he was informed that he had to apply in order to be considered. Moreover, Plaintiff claims that he intended to apply for a forklift operator position and it is undisputed that no position was available at the time that he intended to apply. Moreover, there is no evidence that a forklift operator position was filled by Caucasians after the time that Plaintiff would have applied. Thus, Plaintiff cannot establish the second, third and fourth prongs of the <u>McDonnell-Douglas</u> test.

## DISABILITY DISCRIMINATION

Plaintiff has argued that he satisfies the three requirements to prevail on his claim for disability discrimination because: (1) he was "disabled", (2) he was qualified to perform the essential functions of the job he desired with or without an accommodation; and (3) he suffered an adverse employment action because of his disability. With respect to Plaintiff's claim of disability discrimination, what is obviously lacking in Plaintiff's response to Defendant's Motion for Summary is any facts which would substantiate that Plaintiff had a "disability". Plaintiff merely states without much support that he is disabled under the law because there was a record of an impairment and because he was regarded as having an impairment.

Plaintiff's argues that a "record of an impairment" is substantiated because he was off work for a period of time due to a workers' compensation injury with his prior employer. Plaintiff proceeds to argue facts related to the handling of his workers compensation claim by his prior employer and inappropriately attributes them to Defendant. Plaintiff takes great effort in ignoring the definition of an impairment and wants this Court to accept that he has an impairment without any

analysis. In order to be an impairment under the law, the impairment has to be "a mental or physical impairment that substantially limits one or more major life activities". MX Group, Inc. v. City of Covington, 293 F.3d, 326, 339 (6th Cir. 2002), citing 28 CFR, Section 35.104(3). In his Memorandum in Opposition, Plaintiff hasn't even presented the factual basis for a finding that he was even disabled. In fact, it is impossible to discern what, if any, impairment Plaintiff suffered as a result of his work-related injury. Having a history of a work-related injury, does not result in an automatic finding of an impairment which substantially limits one or more major life activities. Moreover, Plaintiff lacks any evidence that Defendant was even aware that Plaintiff had a record of an impairment which substantially limits one or more major life activities.

Next, Plaintiff has argued that Defendant regarded Plaintiff as disabled. Similarly, in order to be regarded as disabled, a Plaintiff must prove that the impairment that the employer regards him as being disabled meets the same definition. Plaintiff has failed to even address much less satisfy his burden of production that his "impairment" meets the definition of an impairment that substantially limits one or more major life activities. Not surprising, Plaintiff has not even attempted to refute the argument and many cases cited by Defendant establishing that Plaintiff did not have a record of an impairment and was not regarded as having an impairment which "substantially limits one or more major life activities."

The only evidence presented is that Defendant, through Ms. Freeman, knew that Plaintiff could not perform the essential functions of his specific job as determined by his doctor who would not release him to full duty until February 4, 2002. There is no evidence that Defendant considered Plaintiff's alleged workers compensation leave as anything other than his inability to meet the duties required to perform his job. Plaintiff has cited the case of Ross v. Campbell Soup Co., 237

F.3d 701 (6th Cir. 2001) for the definition of what constitutes "regarded as". However, the Ross case involved a severe situation where the employer authored many memos and made many comments concerning the employee's physical condition including an assessment of whether he was disabled under the ADA, prior to being fired. The Sixth Circuit also analyzed the requirement that the "regarded as" prong of the ADA requires that the employer "entertain misperceptions about the individual" as stated in the case of Sutton v. United Air Lines, 527 U.S. 471, 489 (1999). There is no evidence that Defendant ever entertained misperceptions about Plaintiff. The only evidence presented is that Defendant knew that Plaintiff could not fully return to his prior position until February 4, 2002. Plaintiff could have applied for a job anytime he wanted to apply. No one told him he had to wait until he was released from his doctor. It was his decision to make.

The Sixth Circuit has uniformly held that an employer's knowledge that an individual cannot perform the requirements of a single job, does not result in a finding of "regarded as" disabled. In the case of Kocsis v. Multi-Care Management, Inc., 97 F.3d 876 (6th Cir. 1996), the Sixth Circuit held:

> [t]hat definition of disability "is designed to protect against erroneous stereotypes some employers hold regarding certain physical or mental impairments that are not substantially limiting in fact." Schluter v. Industrial Coils, Inc., 928 F. Supp. 1437, 1448-49 (W.D. Wis. 1996). Under that provision, a "plaintiff must show that the perceived impairment is a substantial limitation on a major life activity." Id. at 1449; accord Byrne v. Board of Education, 979 F.2d 560, 567 (7th Cir. 1992) ("an employer does not necessarily regard an employee as handicapped simply by finding the employee to be incapable of satisfying the singular demands of a particular job," quoting Forrisi v. Bowen, 794 F.2d 931, 934 (4th Cir. 1986)).

Plaintiff has not attempted to distinguish this case or its holding. Rather, Plaintiff wants to attribute facts related to the handling of his workers compensation claim by his prior employer to Defendant.

11

Plaintiff was never considered a qualified applicant because he never applied for a job. He was never told not to apply until February 4, 2002, rather that he could wait and apply then. It was his decision as to when he wanted to apply. No employer is obligated to tell a prospective applicant when they should apply. Plaintiff was only concerned about missing a deadline which did not apply to him. He never asked whether he could apply before February 4, 2002 only if he **had to** apply by a certain date.

On the day that Plaintiff allegedly came to apply for a job, the doctor had already released him for full, unrestricted duty, and there is no evidence that Defendant regarded him as being anything but available for full duty. Prior to February 4, 2002, Plaintiff considered himself unable to perform the functions of his job. Therefore, he could not be regarded as being disabled by the employer because he deemed himself disabled. While he claims at this late date that he was "perfectly able to meet the job duties" as stated in <u>Ross v. Campbell Soup Co.</u>, 237 F.3d, 701, 706 (6th Cir. 2001), he proceeded to obtain a doctor's excuse which prevented him from working until February 4, 2002. Plaintiff argues that Defendant had employed a "100% healed rule", but there is absolutely no evidence that any such policy was effectuated by Defendant. Rather, all of the evidence submitted by Plaintiff is that **Deerfield Company** utilized a "100% healed rule", not Defendant.

Contrary to Plaintiff's assertions, Defendant did not adopt a hiring policy which refused to consider Plaintiff for employment. Rather, Defendant adopted a hiring policy that gave a preference to the active employees of Deerfield Manufacturing Company, who were subjected to evaluation, for the jobs at Deerfield Manufacturing Inc. This preference does not prevent the hiring of an individual with a disability, but rather gave a preference to those active employees who could be evaluated. Defendant never refused to consider Plaintiff for employment, but rather it decided

not to place him in the preferential group of potential applicants. This preference given to the active employees of Deerfield Company does not in any way create a discriminatory basis that is viable under the law. Every case cited by the Plaintiff involved situations where existing employees of a company were allegedly discriminated against by the employer when they sought positions within the company. Each case involved the employee's existing employer regarding the individual as being disabled and unable to perform the job that they sought. Unlike those cases, Plaintiff was not an existing employee of Defendant and was never regarded as having a disability by Defendant.

Plaintiff continues to incorrectly state that Defendant would not allow Plaintiff to apply for work until he could return to full duty. This is another blatant misstatement of the facts in this case. Plaintiff has consistently testified that he was told by Defendant's human resource manager that he did not have to meet a certain deadline like the active employees to file his application but that he could wait until February 4, 2002 to apply. There is absolutely no evidence that he was required to wait until he was 100% healed to apply for a job at Defendant Deerfield Inc.

Not surprising, Plaintiff does not even attempt to try to argue that his disability is of the type that the statutes are designed to protect. Plaintiff does not even attempt to address the Sixth Circuit decisions as well as the federal law which states that the inability to perform a single, particular job does not constitute a substantial limitation on the major life activity of working. Defendant's only knowledge of Plaintiff's alleged impairment was that he could not perform his specific job. As a result, Plaintiff has failed to satisfy the first prong of a prima facie case of disability discrimination.

The second and third prongs of a prima facie case were barely addressed by Plaintiff. Plaintiff merely states the law regarding being qualified to perform the job with or without a

reasonable accommodation.  In this case, no reasonable accommodation was ever requested nor is one even suggested by Plaintiff at this late date.  It is difficult to understand exactly what Plaintiff is trying to argue in his section entitled "plaintiff was qualified", except Plaintiff flagrantly misstates that he was denied the ability to apply for a job on January 24, 2002.  The evidence is undisputed that he called to see if he needed to apply by the deadline given to the active employees of Deerfield Company.  As this deadline did not apply to Plaintiff, he was correctly told that he did not need to apply by that deadline and could wait to apply on February 4, 2002.  It was never presented to Plaintiff that he could NOT apply before February 4, 2002.   It always remained Plaintiff's decision as to when to apply.

Plaintiff efforts to satisfy the third prong of a prima facie case includes a brazen misquote of Ms. Freeman that Plaintiff was not considered for employment because he was not an active employee.  Rather, Plaintiff was not considered in the preferential group of Deerfield Company employees because he was not an active employee and could not be evaluated.  There is no evidence that Defendant made any decisions with respect to Plaintiff based upon his disability.  He was not placed in a certain preferential class of candidates because he could not be evaluated.  His disability may have prevented him from being part of business justified preference, but it was not the reason for him not being hired.  He did not apply for a job and there were no jobs available that he sought.

Plaintiff has failed to satisfy the three-part test for a disability discrimination case. Plaintiff has not substantiated that he was disabled under the law either through a record of such disability or being "regarded as" having such disability.  Any impairment that Plaintiff allegedly believes he suffered from was not of the type or scope of impairment contemplated by the statutes. Plaintiff failed to apply for a job therefore he was not qualified.  In addition, Defendant hired Earl

Baker, who had just returned to active status at Deerfield Company after being on an extended workers compensation leave which was much longer than Plaintiff's leave. If Defendant was refusing to hire individuals who had just returned to work after being on disability leaves because of a pattern of disability or perception of disability, then Defendant would not have hired Earl Baker. There is no evidence to support a finding that the employer engaged in illegal disability discrimination with respect to Plaintiff.

## PUBLIC POLICY CLAIM

Plaintiff contends that "employers should not be permitted to take adverse actions or base hiring decisions solely on the fact that an employee has been injured at work and made a claim for benefits." See, Plaintiff's Memo in Opp, pg. 12. Plaintiff further states that "the essence of Plaintiff's claim is that Defendant refused to allow Plaintiff to submit an application or be considered for employment until his workers' compensation leave was exhausted." Contrary to Plaintiff's assertion, there is absolutely no evidence that Defendant refused to allow Plaintiff to submit an application or be considered for employment prior to the exhaustion of his workers' compensation leave. He inquired as to whether he had to meet a deadline placed upon the preferential candidates for filing an application and he was told that he did not. There is not a scintilla of evidence to indicate that Defendant "refused to allow" Plaintiff to submit his application prior to his full release. Plaintiff wants to, once again, ignore the basis for the preferential hiring decision of Defendant. It did not matter why employees were no longer active employees of Deerfield Company, rather the critical factor was that the active employees underwent an evaluation process. Plaintiff did not fall within that category to be considered as a preferential candidate for employment as is true for every other applicant who applied for employment and were not active employees of Deerfield Company.

15

Plaintiff has asked this Court to develop a new public policy claim regarding wrongful hiring under Ohio law. While Ohio has recognized public policy claims with respect to wrongful discharge, there has been no such claims allowable with respect to hiring. Notwithstanding the fact that there is no precedent for such claim, Plaintiff very clearly lacks the causation element necessary for the development of a public policy claim. Plaintiff must establish that his failure to be hired was directly related to a violation of public policy. Plaintiff was treated in the same manner as every other individual who was not an active employee. The fact that he had filed a workers compensation claim with his prior employer was not what prevented him from being part of the preferential group. Individuals who had left employment at Deerfield Company previously or who were on leave for reasons unrelated to workers compensation claims were all treated in the same manner as Plaintiff. Therefore, Plaintiff cannot show that he was not considered for employment because of his workers' compensation claim as other individuals were treated the exact same way who did not have a workers' compensation claim.

## BUSINESS JUSTIFICATION

Defendant submits that Plaintiff has failed to satisfy the elements necessary to state a claim for racial and/or disability discrimination. Therefore, this Court needs not review or analyze the non-discriminatory reasons given for Defendant's conduct. Notwithstanding, Defendant has presented ample evidence and argument with respect to its non-discriminatory conduct. The ultimate burden of proof rests with the Plaintiff to prove by a preponderance of the evidence that the articulated business reason was a pretext for discrimination. See, Cooley v. Carmike Cinemas, 25 F.3d 1325, 1329 (6th Cir. 1994). Plaintiff "must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." See, Manzer v. Diamond Shamrock Chems. Co., 29

F.3d 1078, 1083 (6th Cir. 1994).   However, "[m]ere conjecture that [the] employer's explanation is

a pretext for intentional discrimination is an insufficient basis for denial of summary judgment."  See,

Carney v. Cleveland Heights - Univ. Heights City Sch. Dist., 758 N.E.2d 234, 245 (8th Dist. 2001).

         Defendant's burden to articulate a nondiscriminatory reason has been characterized

as an "exceedingly light" one.  Perryman v. Johnson Prods. Co., 698 F.2d 1138, 1142 (11th Cir.

1983). "The defendant need not persuade the court that it was actually motivated by the proffered

reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it

discriminated against the plaintiff." Burdine, 450 U.S. at 254-55. To satisfy this burden, "the employer

need only produce admissible evidence which would allow the trier of fact rationally to conclude that

the employment decision had not been motivated by discriminatory animus." Id. at 257.  The Supreme

Court emphasized in Hicks that, "[b]y producing evidence (whether ultimately persuasive or not) of

nondiscriminatory reasons, [employers] sustain their burden of production, and thus place themselves

in a 'better position than if they had remained silent.'" Id.

         Plaintiff submits three reasons why Defendant's reasons are pretextual.  First, Plaintiff

contends that Defendant's contention that Plaintiff did not submit an application is "incredible."  The

fact that Plaintiff did not submit an application is not in dispute: **Plaintiff did not submit an**

**application**.  Even assuming that Plaintiff had applied for a job (which he didn't), Plaintiff ignores

the fact that there was no forklift operator position available for which Plaintiff claims that he was

seeking.  Plaintiff wants to focus on other jobs available in the plant but ignores Plaintiff's express

testimony that he was seeking a forklift operator position.  Just as Plaintiff wants to argue that it is

incredible to believe that Plaintiff would have made the trip to the facility to fill out an application and

leave without doing so; it is equally incredible to believe that Ms. Freeman, on January 24th, after

17

telling Plaintiff that he needed to apply for a job, that he could come in on February 4th to fill out an application and that she would see him then, would then indicate to him 10 days later that he had been considered for employment without an application.   If anything, a  miscommunication occurred between Plaintiff and Ms. Freeman when she required him to leave the employee-only area because he had not been hired by the new owner.

Second, Plaintiff claims that the reasons for not hiring Plaintiff have changed and that this change somehow substantiates that the reason is a pretext.  There has been absolutely no change in the reason why Plaintiff was not hired.  The employer has consistently indicated that Plaintiff did not meet the qualifications to be given preferential treatment as an active employee of Deerfield Company and that he did not submit an application to be considered for employment.  These reasons have remained the same throughout the litigation.  There has been absolutely no conflicting reasons given which could create a jury issue with respect to pretext.

Finally, Plaintiff argues that the reasons proffered by Defendant are simply unreasonable.   Plaintiff apparently believes the following conduct is unreasonable: (1) giving preferential status to the active employees of Deerfield Company following an evaluation, (2) responding to a potential applicant inquiring whether a deadline was applicable to him, (3) requiring all applicants to submit applications, and (4) asking a person who had not been hired to leave an employee-only area.  Defendant's conduct does not remotely suggest unreasonableness.  Rather, the efforts of Ms. Freeman and Mr. Randall to assess and evaluate the active employees of Deerfield Company was more than what Deerfield Inc. was required to do.  The law very clearly states that Defendant had absolutely no obligation to hire employees of Deerfield Company.

There is absolutely no factual issue with respect to Defendant's motives.  As the

18

evidence has shown, Defendant hired all African-American active employees of Deerfield Company, but not all Caucasians. In addition, Defendant Deerfield Inc. hired many individuals who had just recently returned to work after being off on lengthy workers' compensation leaves. Therefore, there is no indication that a person's absence from the work force due to a workers' compensation leave affected their ability to be hired by Defendant.

It is clear that there has been no racial motive and absolutely no disability motive with respect to the hiring decisions made by Defendant when it opened its new plant. Clearly, the employer's basis for not considering Plaintiff for employment was because he failed to submit an application. Moreover, the employer did not have a position available for which Plaintiff was seeking. Plaintiff was never told to leave the area where the applications were available to the public. He was told to leave the area which was for employees only after he entered through an employee only door after parking in the employee only parking lot. Plaintiff's conduct resembles that of an employee who does not want to take responsibility for his own actions. The employer has only acted with pure motives and has done absolutely nothing discriminatory. There are no disputed issues of fact with respect to motive or intent for the jury to decide, as it is very clear that by Plaintiff's own admission that he was told he could apply for a job. He also knew that in order to be hired, he had to apply for a job. It does not make any sense that he would be told anything differently by the same person ten (10) days later.

Plaintiff has ignored a critical piece of evidence with respect to the conversation on February 4, 2002. There is a daily record of events that Ms. Freeman wrote on February 4, 2002 with respect to her conversation with Mr. Allen. Which states as follows:

- asked received letter - yes

- no longer employee - sold
- anything in lockers
- came fill out paperwork/other employees
- welcome to fill out application/not employee of new company

See Exhibit 6 attached to Depo. of Janet Freeman. The deposition of Ms. Freeman, as well as her notes in her planner of the exact same date, all indicate the same thing with respect to what she has testified concerning the conversation. She asked him whether he had received the letter which terminated his employment with Deerfield Company, was aware that he was no longer an employee because the company had been sold, that he could obtain his articles from the lockers, that he came to fill out the paperwork and that he was welcome to fill out an application, but that he was not an employee of the new company. It seems odd that she would make these notations in her planner regarding Mr. Allen on the very same day, if such did not occur.

## **CONCLUSION**

First and foremost, Plaintiff's claims, as stated in the Amended Complaint, against Defendant for failing to "rehire" him must fail, as Plaintiff was never employed by Defendant and therefore could not have been "rehired". If the Court decides to overlook the stated allegations in the Amended Complaint, Plaintiff still has failed to establish a *prima facie* case for race discrimination. Plaintiff failed to apply for a position with Defendant even though he was fully aware of the fact that all individuals interested in working for Defendant were required to apply for a position. There are absolutely no similarly situated Caucasian individuals who were hired by Defendant. Notwithstanding the fact that Plaintiff cannot prove a *prima facie* case, Defendant had a legitimate nondiscriminatory reason for not hiring Plaintiff, he NEVER applied. Plaintiff's claims for disability discrimination must fail because Plaintiff was not disabled under the ADA. As to

20

Plaintiff's public policy claim embodied in R.C. §4123.90, Plaintiff failed to provide the statutorily mandated 90-day written notice of violation and therefore cannot proceed with a public policy claim based upon facts which would be barred by the statute. Additionally, Plaintiff's claim for violation of public policy must also fail because Ohio has not recognized a public policy claim for failure to hire.

For the foregoing reasons, Defendant Deerfield Manufacturing, Inc., a subsidiary of Ice Industries, Inc. respectfully requests that its Motion for Summary Judgment be granted and that all claims be dismissed.

Respectfully Submitted,

**WISE & DORNER, Ltd.**
/s/    Renisa A. Dorner
Renisa A. Dorner (0040192)
**WISE & DORNER, Ltd.**
151 N. Michigan Street, Ste. 333
Toledo, Ohio 43624
Tel: (419) 327-4303
Fax: (419) 327-4302
Attorney for Defendant

21

## CERTIFICATE OF SERVICE

       I hereby certify that on this 7th day of January, 2003 a copy of foregoing Defendant's Request for Extension of Time was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

                         /s/      Renisa A. Dorner             
                                 Renisa A. Dorner (0040192)

E:\Deerfield Mfg\Allen\replymemo.wpd