UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **MAURICE ALLEN** | : | Case No. 1:02cv492 |
| | : | |
| **Plaintiff,** | : | Judge Speigel |
| | : | Magistrate Judge Hogan |
| v. | : | |
| | : | |
| **DEERFIELD MANUFACTURING** | : | **PLAINTIFF'S OBJECTIONS TO** |
| **INCORPORATED, A SUBSIDIARY** | : | **REPORT AND RECOMMENDATION** |
| **OF ICE INDUSTRIES** | : | |
| | : | |
| **Defendant.** | : | |

I.  **INTRODUCTION**

On September 28, 2005, the Magistrate Judge issued a Report and Recommendation (R&R). The Magistrate recommended that Defendant's motion for summary judgment be granted regarding Plaintiff's claims for race and disability discrimination. The Magistrate also recommended that Plaintiff's state-law claim for violation of Ohio's public policy be dismissed without prejudice. Plaintiff objects to the R&R for the following reasons:

First, the Magistrate held that Plaintiff could not make out a prima facie case of discrimination because he did not submit an application. Plaintiff testified that when he went to the plant on February 4, 2002 to fill out an application, he was not permitted to do so. The evidence was hotly disputed and raised at least a material factual issue for the jury.

Second, the Magistrate erred in holding that the stated reason for not hiring Plaintiff – his failure to apply – was not pretextual. Plaintiff went to the plant to fill out an

1

application. He was denied the right to do so and told a decision not to hire him had already been made. Again, the evidence raised a material factual dispute for the jury. The evidence was reviewed in a light most favorable to Defendant instead of Plaintiff. In addition, a credibility dispute was resolved in Defendant's favor.

Third, the Magistrate's recommendation that Plaintiff failed to make out a prima face case of disability discrimination should be rejected. Defendant wrongfully perceived that Plaintiff was disabled and refused to consider him for employment until the day he was released to work.

## II.  FACTS

Plaintiff accepts the statement of the facts presented in the R&R and will not repeat them, except in the context of the argument set forth below.

## III.  ARGUMENT

### A.  There Is A Prima Facie Case Of Race Discrimination

Plaintiff asserted claims for race discrimination in violation of Title VII, 42 U.S.C. § 1981, and O.R.C. § 4112.02(A). The requirements of a prima facie case in this context are well established. Plaintiff must show (1) he was a member of the protected class; (2) he applied for and was qualified for the position he sought; (3) he was rejected; and (4) a Caucasian was hired instead of him or the job remained vacant. McDonnell-Douglas v. Green, 411 U.S. 792, 802 (1973). See also Texas Dept. of Commun. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

2

There was no dispute that as an African-American, Plaintiff is a member of the protected class; that he was qualified for the job he sought; that he was rejected; and that Caucasians were hired. (R&R at 11). The Magistrate held that Plaintiff failed to make out a prima facie case because he did not submit an application for the job. (R & R at 12). Reasonable jurors could disagree.

Plaintiff clearly wanted to submit an application to work at Deerfield, Inc. It is undisputed that he called Janet Freeman, the Human Resources Director, in January of 2002 and asked her about a deadline for applications. (Freeman Aff., ¶ 9).[1] Plaintiff told her he wanted to fill out an application and be considered for employment. Plaintiff confirmed that Freeman received the doctor's note allowing him to return to work on February 4, 2002. (Allen Aff., ¶ 8).[2] Freeman acknowledges this conversation. (Freeman Aff., ¶ 12; Freeman depo. at 81). Freeman also admits that she told Plaintiff to submit an application on February 4, 2002. (Id.). When Plaintiff went to the plant that day to do so, Freeman told him the new owner decided not to hire him, that he needed to leave the plant, and that he should apply for unemployment benefits. (Allen Aff., ¶ 10). There is substantial evidence that on February 4, 2004, Plaintiff was denied the opportunity to apply for any of the available jobs.

In support of his argument that the requirement of a formal application should be relaxed in this case, Plaintiff cited Dews v. A.B. Dick Co., 231 F.3d 1016, 1022 (6th Cir. 2000). In Dews, the Sixth Circuit held that the application requirement can be satisfied even when no formal application is submitted. The court further held that an employer

---

[1] Ms. Freeman's affidavit is attached to Defendant's motion for summary judgment.
[2] Plaintiff's affidavit is attached to Plaintiff's memorandum in opposition to Defendant's motion.

3

has an obligation to consider a logical candidate for a position. (Id. at 1021-1022). In reversing the decision of the district court, the Court stated:

> "The court failed to recognize, however, that it would be impossible for any plaintiff to meet those requirements if the company would not allow him to apply for and be considered for the position. … Applying the logic of the district court, even if the company did discriminate against Dews on the basis of his race, he would never be able to prove it successfully if the very act of which he complains – that the company discriminated against him by not considering him for the promotion – is a required element of the prima facie case."

Id. at 1021.

The Magistrate held that Dews was inapposite because it arose in the context of a promotion and there was evidence that Defendant notified its employees of the application process. (R&R at 13-14). However, the Dews court stated the same "application" requirement for a prima facie case in the promotion context. Id. at 1020. The logic and rationale of Dews fully applies here. If an employee makes it known that he wants a job, makes an effort to apply, actually goes to the facility to do so, but is told that there is no need to apply because it has already been determined that he will not be hired, the application requirement should be satisfied. As noted in Dews, an employer could discriminate with impunity by simply refusing to allow an employee to fill out an application and then argue that he failed to make out a prima facie case. While the facts of this case may not align perfectly with those in Dews and the other cases cited favorably by the Sixth Circuit in that opinion, the rationale cited above certainly supports Plaintiff's argument.

Further, in this case, the establishment of a prima facie case turns on a credibility determination. Plaintiff asserts that, as instructed, he went to the plant on February 4, 2002 to fill out an application and told Freeman that was his purpose for being at the

4

plant. According to Plaintiff, when he arrived, Freeman told him he had leave and that the new owner decided not to hire him. When Plaintiff asked why the new owner did not hire him, Freeman said she did not know. (Allen Aff., ¶ 10). Freeman admits there was a conversation with Plaintiff on February 4, 2004 about an application. (Freeman Aff., ¶ 11). She denies however, that Plaintiff was told that the new owner decided not to hire Plaintiff. She attributes Plaintiff's failure to fill out an application to a "misunderstanding" and a noisy environment. (Id.). If Plaintiff is believed, jurors could conclude that he was denied the opportunity to apply for a job. Credibility determinations cannot be made by the court on summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The Magistrate acknowledged this differing testimony, but ultimately accepted Freeman's version. (See R&R at 5-6, and 15 noting that Freeman's statement only reflected the "reality" that Plaintiff had not submitted an application).

There is another problem with the Magistrate's analysis. Defendant asserted that Plaintiff could not make out a prima facie case because he did not apply for a job. Defendant cites the same fact as its legitimate and nondiscriminatory reason for not hiring Plaintiff. Defendant has essentially merged the issues of application and pretext. In Cline v. Catholic Diocese of Toledo, 206 F.3d 651 (6th Cir. 2000) the Court noted that the McDonnell Douglas test requires that the determination of whether the employee is qualified be made independent of the employer's non-discriminatory justification for the decision at issue. The Court rejected this "conflated" argument that seeks to thwart the establishment of a prima facie case. 206 F.3d at 660-661, 664. As recognized by the Court in Dews, the same proof problem for a rejected employee arises when there is a disputed issue regarding whether an employee has applied for a position.

Finally, Plaintiff is not asking the Court to be excepted from the application process. (R&R at 15). Plaintiff made it known that he wanted to fill out an application and went to the plant to do so. This is not a situation where an employer is blindsided by a claim from a prospective employee who did not fill out an application or ask to be considered for employment. Plaintiff and Freeman were not strangers. Both had worked with Defendant's predecessor.

Reasonable minds could differ as to whether the preponderance of the evidence establishes a prima facie case. See Dews, 231 F.2d at 1022-23. Accordingly, Plaintiff objects to the Magistrate's conclusion on this point.

### B.    The Stated Reason For Refusing To Hire Plaintiff Is Pretextual

Once a prima facie case is established, the burden shifts to Defendant to articulate a legitimate non-discriminatory reason for its conduct. Johnson v. Dept. of Health and Human Services, 30 F.3d 45, 47 (6th Cir. 1994). Under Reeves v. Sanderson Plumbing, Inc., 530 U.S. 133 (2000), pretext is established by showing that the stated reason for the employer's decision is "false." An employer's articulated reason for termination is false or pretextual when it: (1) has no basis in fact; (2) did not motivate the decision; or, (3) was insufficient to motivate the decision. Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir. 1994). A prima facie case plus a showing that Defendant's articulated reason is false is sufficient for Plaintiff to prevail. St. Mary's Honor Center v. Hicks, 509 US 502, 509-510 (1993); Kline v. Tennessee Valley Authority, 128 F.3d 337, 347 (6th Cir. 1997). "There are no hard and fast rules as to . . . what evidence is needed in order to establish pretext. Talley, 61 F.3d at 1248.

6

The Magistrate concluded that even if Plaintiff could establish a prima facie case, no rationale trier of fact could find that Defendant's stated reason for not hiring Plaintiff – his failure to submit an application – was pretextual. (R&R at 15-21). Plaintiff respectfully disagrees. The evidence was sufficient to create a jury issue.

According to the Magistrate, Plaintiff presented no evidence that Defendant's assertion that Plaintiff failed to apply for the job was "factually false." (R&R at 16-17). While there is no dispute that Plaintiff did not submit a written application, he made Defendant aware of his desire to do so and went to the plant for that purpose. Freeman admits that Plaintiff told her on February 4, 2002 that he wanted to apply for a job. Plaintiff has testified unequivocally that in response, Freeman told him the new owner decided not to hire him and that he needed to leave the plant. (Allen Aff., ¶ 10). If Defendant would not allow Plaintiff to submit an application, jurors could find that Defendant's refusal to hire him for that reason has no basis in fact. Under these circumstances, pretext is established under the first method in <u>Manzer</u>, 29 F.3d at 1084.

In addition, even if jurors decided that Defendant's stated reason for rejecting Plaintiff had some factual basis, they could still find that Plaintiff's failure to formally submit an application was "insufficient to motivate the decision." (<u>Id</u>.). As a result, reasonable jurors could conclude that Plaintiff established pretext under the third prong in <u>Manzer</u>. (See R&R at 17).

The Magistrate acknowledged that there was evidence supporting the conclusion that Defendant decided not to hire Plaintiff <u>before</u> he attempted to fill out an application, and that as a result, his failure to do so could not have motivated the decision. (R&R at 18-19). However, the Magistrate then cited various arguments that weighed against Plaintiff.

The Magistrate noted that a formal application was required. (Id. at 18). However, as argued above, jurors could find Plaintiff was not allowed to submit one. The Magistrate pointed out that no one kept Plaintiff from applying for a job prior to February 4, 2002. (Id. at 19). However, Plaintiff was told by Freeman to fill one out that day and he complied. There is no evidence that Freeman told or encouraged Plaintiff to do so sooner. The Magistrate stated that Freeman's directive for Plaintiff to leave the facility was reasonable. (Id. at 20). But, jurors could question her conduct and believe she overreacted. Plaintiff was not a threat to anyone. Freeman could have escorted Plaintiff to the personnel office to fill out an application instead of out of the building. In sum, the Magistrate minimized Freeman's statement that the new owner already decided not to hire Plaintiff by weighing the above facts and concluding that even if Plaintiff was believed, there was no evidence of race discrimination. (Id. at 18-20).

Whether Plaintiff was rejected prior to attempting to apply for a job rests on a credibility determination. Plaintiff says unequivocally Freeman told him on the morning of February 4, 2002 that the new owner decided not to hire him, and that he needed to leave the building. (Allen Aff., ¶ 10). Freeman says Plaintiff must have "misunderstood" her statement. (Freeman Aff., ¶ 11). A jury should decide who to believe.

Plaintiff presented a prima facie case. He made it clear he wanted a job. He was not hired. The same day that he was rejected and sent home, two Caucasians were hired. Defendant's sole reason for rejecting Plaintiff was that he did not submit an application. There is evidence that that Defendant's articulated reason is false and that the decision was made before Plaintiff attempted to submit an application. Plaintiff does not have to provide any further evidence of race discrimination to prevail. As set forth above, a *prima*

*facie* case plus a showing that Defendant's articulated reason is false is sufficient for Plaintiff to prevail. St. Mary's Honor Center, supra. In Reeves, the Supreme Court held that "a prima facie case, combined with sufficient evidence to find that the employer's asserted justification was false may permit the finder of fact to conclude that the employer unlawfully discriminated." 120 S.Ct. at 2108-09. To the extent the Magistrate required proof of "pretext plus," the court erred. See Ross v. Campbell Soup Co., 237 F.3d 701, 710 (6th Cir. 2001).

Finally, jurors could find Defendant's explanation for its conduct is simply unreasonable. In Wexler v. White's Fine Furniture, Inc., 317 F.3d 564 (6th Cir. 2003), the Sixth Circuit accepted the notion that in reviewing the issue of pretext, a jury can consider the unreasonableness of the employer's stated reasons for its conduct. (Id. at 577).

Reasonable jurors could find Defendant's conduct was unreasonable and arbitrary. They could conclude that Plaintiff, who stated a desire to apply for a job, would not have left the plant on February 4, 2002 without doing so unless the facts were as he stated. There are factual disputes regarding Defendant's true motive which preclude summary judgment. It is settled that such questions are not appropriate for resolution on a motion for summary judgment. See Johnson v. UC et al, 215 F.3d at 578 (6th Cir. 1998). ("In every civil rights action, it is the responsibility of the jury to determine whether the defendant's action were invidious, pretextual, or improperly motivated.").

### B.  There Is A Prima Facie Case Of Disability Discrimination

Plaintiff asserted claims of disability discrimination under both O.R.C. § 4112.02(A) and the Americans With Disabilities Act (ADA), 42 U.S.C. §12101. To prevail on his

claims, Plaintiff was required to show that: (1) he is "disabled"; (2) he was qualified to perform the essential functions of the job he held or desired with or without accommodation; and (3) he suffered an adverse employment action because of his disability. See McKay v. Toyota Motor Mfg., 110 F.3d 369, 371 (6th Cir. 1997) and Hood v. Diamond Products, 74 Ohio St. 3d 298, 302 (1996). See also Wooten v. City of Columbus, 91 Ohio App.3d 326, 332 (1993) and Hazlett v. Martin Chevrolet, Inc., 25 Ohio St. 3d 279 (1986). Once a plaintiff makes out a prima facie case in a handicap discrimination claim, summary judgment is inappropriate. Degnan v. Goodwill Industries of Toledo, 104 Ohio App. 3d 589, 597 (1994). Plaintiff has presented a prima facie case.

### 1. **Plaintiff Was Disabled.**

The ADA and Ohio law have similar definitions for the term "disability." Under the ADA, a disability is: (1) a physical or mental impairment that substantially limits one or more of the major life activities of the individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Section 4112.01(A)(13) of the Ohio Revised Code defines a disability as follows:

> "'Disability' means a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment."

### a. **There is a record of an impairment**

As set forth in the R&R, a record of an impairment means an individual "has a history of, or has been misclassified as having, a mental or physical impairment that

10

substantially limits one or more major life activities." MX Group Inc. v. City of Covington, 293 F.3d 326, 339 (6th Cir. 2002), citing 28 C.F.R. §35.104(3). (R&R at 22).

The Magistrate held that Plaintiff did not present any evidence of his disability, or how it impacted any major life activities. (Id.). However, there was proof that Plaintiff was injured at work in August of 2001 and that that he suffered a wrist, neck, and back injury. Plaintiff had surgery on his wrist in November of 2001. Plaintiff clearly had physical impairments. He was awarded workers compensation benefits for a cervical sprain, thoracic sprain, and sprained wrist. (See Allen Aff., Ex. 1). There was also evidence that Plaintiff was not able to return to work on an unrestricted basis until February 4, 2002. Plaintiff was not able to "work" or perform "manual tasks." These are major life activities. Defendant conceded that Plaintiff was not considered for employment because he was not an active employee. Plaintiff was not an active employee because of his impairments. Defendant did not dispute Plaintiff's condition. In fact, it used the condition as an excuse not to consider him for employment until February 4, 2002.

### b.    Plaintiff was regarded as disabled

An individual may fall into the definition of being "regarded as having a disability if an employer ascribes to that individual an inability to perform the functions of the job because of a medical condition when, in fact, the individual is perfectly able to meet the job's duties." Ross v. Campbell Soup Co., 237 F.3d. 701, 706 (6th Cir. 2001). The "regarded as" proof focuses not on the employer's state of mind. Id., at 708-709. Under this prong, the "court does not even focus on the disability, but upon the perception of the employer regarding the perceived disability." MX Group Inc., supra, 293 F.3d at 340.

11

There is evidence that Defendant clearly regarded Plaintiff as disabled. Defendant never considered Plaintiff as a "qualified" applicant because he was on a leave due to his physical impairment. He was told there was no need to apply for any job until he was released to work without restrictions. (Freeman Aff. ¶ 9; Allen Aff., ¶ 8).

Defendant's blanket policy that no individual on leave would be considered for employment regardless of their restrictions or proposed return to work date had a negative impact on disabled and injured employees. In his memorandum in opposition to Defendant's motion for summary judgment, Plaintiff cited Henderson v. Ardco, 247 F.3d 645 (6th Cir. 2001) In and Johnson v. Paradise Valley School District, 251 F.3d 1222 (9th Cir. 2001) for the proposition that an employer regards an employee as disabled when it refuses to accept less than an unrestricted return to work. In Henderson, the Court addressed the issue of whether an employee was regarded disabled in connection with an employer's "100% healed rule." The Sixth Circuit held that evidence of such a policy could show that the employer perceived the plaintiff to be unable to perform any job at the plant, and thus, incapable of work in a manufacturing operation. Id. at 651-52. The court also held that the "importance of the 100% rule is its role in determining the threshold issue of perceived disability … Where the 100% rule is applied to mildly impaired persons to exclude them from a broad class of jobs, it may be treating them as disabled even if they are not, thereby qualifying them for protection under the ADA … ." Id. at 653. The Court further noted that the employer's "100%-healed rule, may, for purposes of summary judgment, be interpreted as treating Henderson as incapable of working in a manufacturing operation." Id.

As in <u>Henderson</u>, Defendant simply refused to consider Plaintiff for employment because he was not actively at work due to his injuries. Defendant made no allowance for whether he could be accommodated or the fact that he was expected to return to work on February 4, 2002. As in <u>Henderson</u>, Plaintiff has presented a jury question about whether Defendant perceived Plaintiff's condition to be a substantial limit on his ability to perform the jobs in its facility. When Defendant adopted its hiring policy, and refused to consider Plaintiff for employment, it regarded Plaintiff as disabled from the major life activity of working.

The Magistrate distinguished <u>Henderson</u>. (R&R at 27-28). The Magistrate ruled that there was no evidence that Defendant, as opposed to its predecessor, had such a policy. (<u>Id</u>. at 28). However, Freeman told Plaintiff not to apply until his doctor released him to work. Freeman was acting as Defendant's agent. Defendant made a determination in its hiring policies that only active employees could be considered.

Plaintiff has presented evidence to show that she meets the definition of "disability" under both state and federal law. At a minimum, the question of whether Plaintiff had a record of a disability or whether Defendant "regarded" him as disabled should be presented to a jury for decision.

## IV.    **REMAINING ISSUES**

Because the Magistrate determined that Plaintiff did not make out a prima facie case of disability discrimination, the Court did not address the remaining elements of Plaintiff's claim. Plaintiff refers to the Court to pages 10-11 of his memorandum in

opposition to Defendant's motion for summary judgment regarding those issues and incorporates them herein.

In addition, Plaintiff requests that the Magistrate's conclusion regarding the dismissal of Plaintiff's state law public policy claim without prejudice be held in abeyance pending a review of that claim by the Court. Plaintiff's arguments opposing Defendant's motion for summary judgment regarding that claim are set forth at pages 13-14 of his memorandum in opposition to Defendant's motion.

## V.     CONCLUSION

For all of the foregoing reasons, and for the reasons set forth in Plaintiff's memorandum in opposition to Defendant's motion for summary judgment, Plaintiff requests that the R&R not be adopted by this Court.

Respectfully submitted,

s/ David Torchia
David Torchia – 0015962
Tobias, Kraus & Torchia
911 Mercantile Library Building
414 Walnut Street
Cincinnati, Ohio 45202
(513) 241-8137
Attorney for Plaintiff
davet@tktlaw.com

## **CERTIFICATE OF SERVICE**

    This is to certify that a copy of the foregoing has been filed electronically and will be served via the court's ECF filing system to Renisa A. Dorner, Esq., Wise & Dorner, Ltd., 151 N. Michigan Street, Suite 333, David Building, Toledo, Ohio 43624 on this 14th day of October, 2005.

                                            s/ David Torchia
                                            David Torchia – 0015962